SECOND NATIONAL BANK OF WINONA *vs.* JAMES SPOTTSWOOD, *et al.*

Opinion filed May 7, 1901.

**Negotiable Paper—Payment to One Not in Possession.**

> The maker of a negotiable promissory note, who pays the same to a person who has not the note in his possession and is without authority to collect it, does so at the peril of having to pay it again in case it has been transferred to an innocent holder; but in case the person so receiving payment thereafter pays the proceeds to the holder of the note, and the same is received by him, such payment is as effectual to discharge the debt as though paid direct to such holder.

**Pledgee of Negotiable Paper Receiving Proceeds.**

> A pledgee of a negotiable promissory note, who has received the proceeds of a collateral note and applied the same upon the debt secured by such collateral note, in ignorance of the fact that the sum so received and applied was the proceeds of such note, and has not altered his position by reason of such ignorance, cannot thereafter enforce the payment of such collateral note.

**Defense of Payment.**

> In an action on a promissory note, the evidence is examined, and found to sustain the defense of payment.

Appeal from District Court, Walsh County; *Sauter*, J.

Action by the Second National Bank of Winona, Minn., against James Spottswood and others. Judgment for defendants. Plaintiff appeals.

Affirmed.

*C. J. Murphy,* for appellant.

Where the maker of a note pays same to original payee after transfer thereof to a third party supposing the payee is still the owner of the note he cannot be relieved on the ground that there was an ostensible agency in the payee to act for the transferee of the note. *Murphy* v. *Beard,* 38 N. E. Rep. (Mass.) 32; *Hollingshead* v. *Stuart,* 8 N. D. 40; *Stolzman* v. *Wyman,* 8 N. D. 108. As a general rule possession of a negotiable instrument is sufficient to authorize payment to the party in possession; and payment to a party not in possession of such paper is at the peril of the maker. *Stolzman* v. *Wyman,* 8 N. D. 108, and authorities cited. Fact that holder of a negotiable note fails to notify maker at maturity or demand payment in no manner affects the holder's rights. *Hoffacker* v. *Bank,* 23 Atl. 579. Fact that a party may have attended to collection of notes put up as collateral in a prior similar transaction to the one involved does not prove agency in last transaction. *Smith* v. *Kidd,* 68 N. Y. 160, S. C., 23 Am. Rep. 157; *William* v. *Walker,* 2 Sand. Ch. 325; *Corey* v. *Hunter,* 84 N. W. Rep. 570, 10 N. D. 5, and cases cited; *Burchard* v. *Hull,* 74 N. W. Rep. (Minn.) 163; *Dexter*

v. *Morrow,* 79 N. W. Rep. (Minn.) 394. A presumption cannot be based upon a presumption; but must be based upon an established fact. *Lawson's Law of Presumptive Evidence,* Rule 118; *Douglass* v. *Mitchell,* 36 Pa. St. 440; *Richmond* v. *Aiken,* 25 Vt. 324; *Ellis* v. *Ellis,* 58 Ia. 720. Pledgee of a note as collateral may recover from maker whether paid by maker to pledgor or not. *Williams* v. *Bank,* 20 Atl. Rep. 191; *Griswold* v. *Davis,* 31 Vt. 390. If payment of negotiable note is made without requiring its production it is at the peril of the payer having to pay over again. *Avery* v. *Swords,* 28 Ill. App. 202; *Wheeler* v. *Guild,* 37 Mass. 545. Where payment of negotiable notes is made to pledgor in a suit by the maker thereof it must be made to appear that payment was made with authority of pledgee, or subsequently ratified by him, otherwise he is entitled to recover. *City Bank* v. *Taylor,* 14 N. W. Rep. (Ia.) 128; *Mayo* v. *Moore,* 28 Ill. 428.

*Bosard & Bosard,* for respondent, cited no cases.

YOUNG, J. Action on a promissory note. The defense interposed is payment. The case was tried in the District Court without a jury. Judgment was ordered and entered for the defendants. Plaintiff appeals from the judgment, and requests a review of the entire case in this Court.

The question of payment is the only fact involved. This will be made plain as we proceed with a statement of the facts. On December 13, 1895, the defendants James Spottswood and Sarah Ann Spottswood, his wife, residents of Cavalier, in this state, executed and delivered their joint negotiable promissory note, dated on that day, for $600, to the Winona Manufacturing Company, a Minnesota corporation, the payee named therein, whose principal and sole place of business was at Winona, in that state, whereby they promised to pay to said Winona Manufacturing Company the sum of $600 on December 1, 1896, with 10 per cent. interest thereon from the date of its execution. This note, which is the note in suit, was given for a loan of $600. It was secured by a real estate mortgage. Payment was guaranteed by A. L. and T. A. Miller, the other defendants herein. All dealings of these defendants relating to this note, covering the negotiations for the loan, the execution of the note and mortgage, and the alleged payment, were with one S. W. McLaughlin. McLaughlin was president of the Winona Manufacturing Company, but had his home and office in the city of Grand Forks, in this state. C. N. McLaughlin had charge of the business at Winona. On March 10, 1896, the Winona Manufacturing Company borrowed $10,000 from the Second National Bank of that city, the plaintiff herein, and executed its note to plaintiff for such sum. To secure the payment of such loan it pledged as collateral security and delivered to plaintiff a number of promissory notes, aggregating in amount about $15,000, given by persons residing in this state, among which was the note now in suit. The note is negotiable, and was

properly indorsed to the pledgee by the Winona Manufacturing Company before maturity. No question exists as to the right of plaintiff to recover unless it has been paid. The facts upon which defendants rely to show payment are not disputed. The only question is whether they constitute payment. On January 19, 1897, which was a month and a half after the note became due, the defendants, through A. L. Miller, in response to written demands made both upon the makers and guarantors by S. W. McLaughlin, paid the same to him in full, and took his receipt therefor. A satisfaction of the real estate mortgage was delivered to Miller within a few days thereafter, but the note was not, and never has been, delivered. It was not in McLauglin's possession, and has not been since March 10, 1896, when it was pledged to the plaintiff as collateral security. About a month after receiving the money, McLaughlin informed Miller, for the first time, that the note was up as collateral security, and promised to get it, which promise was subsequently repeated on two different occasions, but was never kept. The note was from the date it was received, namely, March 10, 1896, in the continuous possession of plaintiff at Winona until sent to its attorneys for collection in the fall of 1897. On the facts thus far stated it is entirely clear that the plea of payment is not sustained. Payment to McLaughlin under such circumstances would be merely a payment to a stranger. He was not even the original payee, but, had he been, the result would have been the same; for the law is well settled that payment to the payee of a negotiable promissory note, who has transferred it to an innocent holder, is at the peril of having to pay it again to the person to whom it may have been transferred. See *Hollinshead* v. *John Stuart & Co.*, 8 N. D. 35, 77 N. W. 89; *Stolzman* v. *Wyman*, 8 N. D. 108, 77 N. W. 285 and cases cited. The facts in this case clearly distinguish it from the cases just referred to. In the above cases the notes had not been paid to the holders thereof or their agents, and the question in each case was whether the innocent purchaser or the maker of the note should bear the loss arising from payments to unauthorized agents who had misappropriated the funds. We very properly held that the owners could recover; for they had neither received payment, nor authorized the parties who got the money to act for them in collecting it. In the present case we find from the evidence in the record that the proceeds of the note in suit, which was paid to McLaughlin, were in fact paid by him to the plaintiff, and duly credited upon the debt it secured. Under these circumstances it is not important to determine whose agent he was in receiving the money; for, if it was paid to plaintiff,—and we find it was,—it discharged the debt, regardless of any lack of authority in McLaughlin to receive payment for plaintiff. It is true, the cashier of the plaintiff bank testifies that the note has not been paid; but his statement to that effect is merely an inference, and is overborne by facts which are not in dispute. It appears, and is shown conclusively, that no payments were at

any time made to plaintiff on the $10,000 loan by the Winona Manufacturing Company, the maker thereof. Something like $7,000 in all was paid on it, however, at different times, and every dollar of it was paid by S. W. McLaughlin. On February 20, 1897, he paid $1,000. This payment was just a month after Miller paid him the amount due on the note in suit. There can be no doubt, upon the facts as they appear in the record before us, that the $1,000 payment included the $666.70 he had received from Miller, for there was no other source from which it could reasonably come. Appellant's counsel argue that the payment was from his own private resources, and was not the proceeds of this and other collateral notes. The circumstances are all against that contention. McLaughlin was not the maker of the $10,000 note, or of any of the several renewal notes which were secured by the collateral. The debt to the bank was evidenced by the notes of the Winona Manufacturing Company, and McLaughlin individually did not owe the bank a dollar. The only obligation resting on him was either to return the money he had received from Miller, or to pay it over to plaintiff, and thus dicharge the note in suit, as he had undertaken to do when he received it. That he took the latter course is shown, we think, by his subsequent payment of the $1,000. It may be that the specific money was not transmitted, and it doubtless was not, and it may be, too, that he temporarily appropriated the proceeds of the note to his own use; but that is not important, for it appears that he thereafter personally paid to the plaintiff a greater sum at a time when there was no legal duty upon him, other than to account to plaintiff for the proceeds of the collateral notes which he had collected.

It is urged that no disclosure was made by McLaughlin when he paid the $1,000 that it embraced the proceeds of the Spottswood note. On this the record is silent. McLaughlin, the one witness who could have narrated the facts as they occurred, was not called by either party. Neither has the officer of the plaintiff bank thrown any light upon McLaughlin's relation to the collection of this and other collateral notes, or furnished any information as to how the $1,000 or other payments were made by him,—whether in currency or by draft; whether with or without instructions as to the source from which it came, or place to be applied. All that is before us is the bare fact that $1,000 was paid on February 20, 1897; that it was not paid by the Winona Manufacturing Company; that it was paid by McLaughlin; that it was applied on the debt due the bank, and was not applied on the note in suit, or any other of the collateral notes. It is true that the cashier testifies that the plaintiff did not know that defendants claimed that their note was paid until the fall of 1897, after it had been sent with other notes to plaintff's attorney at Grand Forks for collection. This was almost a year after it was due. Up to that time it appears that no steps whatever had been taken by the officers of the bank as to collecting any of the collateral notes. Whatever had been done had been done by McLaughlin.

But was it necessary, under the circumstances as they are shown to have existed, for McLaughlin to designate to plaintiff the source from which he got the $1,000 to entitle these defendants to the benefit of their payment? We know no rule of law or business imposing such a requirement. The defendants paid the entire amount due on the note to McLaughlin. He paid it to the plaintiff, and it was properly credited on the debt secured. Plaintiff was not prejudiced by McLaughlin's failure to state that $666.70 of the $1,000 was the proceeds of the note in suit. Had he so stated, or had defendants paid their money to the plaintiff personally, the debt to plaintiff would have been reduced by the same amount that it was actually reduced by the payment made through McLaughlin, and no more. Defendants would have cancelled their note by such payment, and that is all they ask in this action; and, upon every principle of justice, it would seem they are entitled to that relief. Plaintiff's position is that it can retain the proceeds of the collection which it received through McLaughlin, and on the ground that it did not know that the money came from the note in suit, enforce payment again, even though it has already had the entire benefit of a prior payment. This contention is not sustainable upon any ground. Had McLaughlin diverted the money to another purpose,—applied it on a personal debt or the debt of another,—or had the bank altered its position innocently, believing that the $1,000 payment was made by the Winona Manufacturing Company from its own resources, and not from funds derived from the collateral notes, the case would be entirely different. But, as has already been shown, there was no diversion or misapplication. Plaintiff stands in the same relative position that it would have been in had defendants paid their note direct, instead of through McLaughlin.

The question involved in this case is an anomalous one. So far as we are able to learn, there is only a single case in which an appellate court has passed upon it, and the conclusion there announced is in entire harmony with our views. The case is *Coleman* v. *Jenkins*, 78 Ga. 605, 3 S. E. 444, in every way similar in its facts to the case at bar. Jenkins owed a note of $135, secured by a real estate mortgage to Palmer. Palmer owed Coleman & Co. $2,700. Palmer pledged Jenkins' note to Coleman & Co. to secure his indebtedness. Jenkins, believing that Palmer still owned the note, paid him in full in cotton. Palmer converted the cotton into money, and remitted the proceeds, "not separately, but in a check for a larger sum," to Coleman & Co., to apply on his debt, which was done. Palmer did not inform Coleman & Co. that he had collected anything from Jenkins, and he had no authority to collect the note. Coleman & Co. undertook to foreclose the Jenkins mortgage. The defense was payment, as in this case. The defense was sustained by the Superior Court, and also by the Supreme Court, in an opinion from which we quote at some length, as follows: "The question is whether the payment to Palmer in cotton, together with his re-

mittance to Coleman & Co. of the proceeds of the cotton so paid, discharged the debt as between Jenkins, the mortgagor, and Coleman & Co., the holders of the note and mortgage. It will be perceived that there was no new credit given to Palmer in consequence of this collateral. There was no increase of the debt for which it was pledged to Coleman & Co., but that debt remained the same, except in so far as it was reduced by the proceeds of this very collateral, together with other payments made by Palmer. If, therefore, Coleman & Co. had known that this money came from Jenkins, they would have made precisely the application of it that they did make. It would have gone to reduce Palmer's debt to them, as it did go. The only difference is that, had all the facts been known, they would have credited to Jenkins as well as to Palmer. The collateral was pledged on the debt as a whole, and not to secure any particular part of it; and the payment was applied in the reduction of the whole debt, and did not leave Coleman & Co. less secure as to any particular part of it than they were before. Moreover, there is no suggestion that the money derived from sale of the cotton was less than the full amount of the debt Jenkins owed. And all this money was covered by the check remitted by Palmer to Coleman & Co. * * * When one gets his due ignorantly, if he is not hurt by his ignorance, it is the same as if he acted with knowledge. Thus, where a negotiable promissory note was transferred before maturity as collateral, and was afterwards paid off in property, not to the holder, but to the payee, who collected without authority, and who, after converting the property into money, transmitted the proceeds to the holder as his own money, and the holder applied the same to the secured debt only, not applying it also to the collateral, and not knowing that he was dealing with a fund derived from the collateral, this was a discharge of the collateral debt, notwithstanding such ignorance on the part of the holder."

In the case at bar the trial court found that the note in suit was paid. That finding is, in our judgment, sustained by the evidence and the judgment of the District Court is accordingly affirmed.

MORGAN, J., concurs.

WALLIN, C. J., (*concurring*). I agree with the majority of the Court that the judgment should be affirmed, but am not wholly satisfied with the reasoning upon which the majority base their conclusion. An examination of the evidence has failed to satisfy me that the money paid to McLaughlin by the signer of the note was ever in fact paid over to the plaintiff. But, in my opinion, the evidence, when considered in its entirety, tends at least to show that McLaughlin was plaintiff's agent for the collection of the note, and there is no evidence whatever in this record to combat this conclusion. The fact of agency being shown,—and I think that it is shown,—it becomes immaterial to inquire whether the funds paid over to the agent were or were not transmitted to the principal.