ARTHUR C. ANDREWS and Another v. NORTHWESTERN NATIONAL BANK.[1]

August 28, 1908.

Nos. 15,646—(186).[2]

**Forged Indorsement—Liability of Drawer.**

The appellants forwarded to their agent a check to be used in paying their debt to a customer. The agent forged the name of the payee, and deposited the check in a bank to his own credit. Being short in his account with his principals, the agent then paid to them a sum of money which included the proceeds of the forged check. The bank on which the check was drawn paid it on the forged indorsement. In an action by the drawers of the check against the bank, *held*, that inasmuch as the proceeds of the check came back to the drawers, and the debt of the

1 Reported in 117 N. W. 621, 780, 122 N. W. 499.

2 April, 1908, term calendar.

agent remained unpaid, they had suffered no damage by reason of the payment of the check, and could not recover the amount thereof from the bank.

Action in the district court for Hennepin county to recover $926.72. The complaint alleged that plaintiffs' certain check upon defendant bank for that amount to the order of Z. W. Thomas was never presented for payment by Thomas nor did he ever indorse the same or order the same to be paid to any person whomsoever, but that the check was presented to defendant by some person other than Thomas and payment thereon demanded, and that defendant without the direction, order, knowledge or consent either of said Thomas or of plaintiffs paid the amount of the check to the person presenting it, and wrongfully charged the sum so paid by it against the account of plaintiffs and has refused to pay that sum to plaintiffs. The answer admitted the making of the check and that it was never presented to said bank for payment by said Thomas, but was presented by the First National Bank of Minneapolis through the Minneapolis Clearing House and paid in accordance with its rules and custom to the bank; that the amount of the check was charged to the account of the plaintiffs and upon subsequent demand for payment defendant refused to pay the same or any part thereof to plaintiffs. As a defense the answer alleged in substance the facts set forth in the second paragraph of the opinion and also: "That said check was never delivered to nor ever became the property of Z. W. Thomas, but remained and was the property of the plaintiffs in this case until so deposited in said State Bank of Berlin, and when so deposited by said P. T. Langdon to the account of P. T. Langdon & Co., in said State Bank of Berlin, the money paid therefor by said State Bank of Berlin and so kept on deposit in said bank always was the money and property of said plaintiffs; and that afterwards on or about the 27th day of October, 1905, said P. T. Langdon, at the request of plaintiffs, drew said money, towit," $926.-72, "out of said bank, and paid the same over to said plaintiffs, and plaintiffs have ever since had, received, kept and retained said money and the whole thereof." The reply admitted a payment by Langdon but denied that it was made to plaintiffs for the money received upon their check or as the money of plaintiffs, and alleged it was paid to

make good an indebtedness to plaintiffs for moneys misappropriated by him other than the check or its proceeds.

The case was tried upon a stipulation of facts and upon "evidence therein introduced by the plaintiffs," before Simpson, J., who ordered judgment in favor of defendant. From the judgment entered pursuant to the order, plaintiffs appealed. Affirmed.

*Durment & Moore*, for appellants.

When Langdon indorsed the check and transferred it to the Bank of Berlin that bank could either (1) sue him on his contract of indorsement or (2) revoke the credit. When the check was transferred to the Bank of Crystal Lake that bank could (1) sue the Berlin bank on its contract of guaranty or indorsement, or (2) sue Langdon on his contract of indorsement, or (3) recover the money from the Berlin bank as money paid under mistake or for which the consideration had failed, if it had paid money, or (4) revoke the credit, if it did not pay money but gave credit. When the check was transferred to the Mankato bank, that bank then would have the same remedies against the Berlin bank and Langdon that the Bank of Crystal Lake had, or (3) it could sue the Bank of Crystal Lake on its contract of indorsement, or (4) recover the money from the Bank of Crystal Lake as money paid under mistake or for which the consideration had failed, if it had paid money. The Mankato bank and the First National Bank of Minneapolis would have similar remedies against prior indorsers of the check.

The foregoing analysis of the transaction makes clear these things: (1) It does not appear that the defendant ever paid any money to any one on account of this check. So far as appears, the defendant, instead of paying the Minneapolis bank money, may have given it credit for the amount of the check on a balance owed to it by the Minneapolis bank. In this event, to deny plaintiffs the right to recover in this action is to allow the defendant to take plaintiffs' money to pay the debt which the Minneapolis bank owed to defendant. (2) In no event did plaintiffs get any of defendant's money. If defendant in fact paid money, it paid it to the Minneapolis bank. The Minneapolis bank did not pass the money back to the prior indorsers, because it had not taken the check for collection, but had bought it and

paid for it, either in money or by credit, before it passed the check to the defendant. The defendant had no remedy against the Mankato bank, the Lake Crystal bank or the Berlin bank, to recover the money as money paid by it under mistake or for which the consideration failed. As against these its only remedy was on the contract of indorsement. Consequently, the money which plaintiffs got from the Bank of Berlin was not defendant's money, and inasmuch as neither the plaintiffs nor any one to whom they directed the money to be paid got defendant's money, the defendant had no right to take credit for it in plaintiffs' account; and, inasmuch as plaintiffs were under no contract to repay the money or to protect defendant in the transaction, nor in any way privy to the indorsements on the strength of which defendant paid the check, defendant has no cause of action which it can offset to plaintiffs' demand. (3) The plaintiffs were not parties to the transaction of negotiating the check or getting the money on it. No one connected with the transaction, from Langdon and the Bank of Berlin down to and including defendant, had any remedy or right of action of any sort against the plaintiffs growing out of that transaction. The defendant paid the check October 9. On October 27 Langdon drew his check for plaintiffs on the Bank of Berlin, not for anything connected with the check bearing the forged indorsement, nor the money received on it, but in payment of a debt he owed plaintiffs. The Bank of Berlin, on October 27, gave plaintiffs credit for this check given by Langdon to plaintiffs and charged it to Langdon's account. Subsequent to October 27 the Bank of Berlin paid plaintiffs the money for the credit it gave them on that day. It thus appears that the only person connected with the transaction who could by any possibility assert a claim against the plaintiffs is the Bank of Berlin, and that cause of action would be based upon a transaction to which defendant was not privy and with which it had no connection whatever.

It is clear that defendant cannot in this action assert the rights of the Bank of Berlin. But if it were otherwise, still the judgment would have to be reversed. On the facts found by the trial court the Bank of Berlin could not recover any part of the money it paid to plaintiffs.

Why should plaintiffs be required to take Langdon for their debtor instead of the defendant? Langdon wrongfully, as against plaintiffs,

forged the name of the payee to the check; defendant wrongfully, as against the plaintiffs, paid the check to a person other than the one plaintiffs directed it to be paid to. Plaintiffs were not responsible for either act. Why should one of the wrongdoers be permitted to say to plaintiffs: "You must look to the other and not to me?" Langdon was indebted to the defendant on his indorsement of the check. Why should plaintiffs instead of defendant be relegated to a lawsuit against Langdon, when defendant's right of action against Langdon is the clearer?

What right had the defendant to pay its debt to plaintiffs through the medium of the Bank of Berlin, and under the false statement and with the understanding of plaintiffs that it was paid by another than defendant and on account of an indebtedness other than defendant's? Yet, in effect, the decision of the trial court is that it has such right. Ordinarily, it would be considered plain fraud. The plaintiffs had the right to direct how payments should be made for their account, and cannot lawfully be required to recognize any such payment as this.

Where one has received money, in payment of an existing debt, from one who has procured that money from a third person by forgery or other fraud, and the one who has so received it in payment of the existing debt had no knowledge that the money had been obtained by means of forgery or fraud, the third person from whom it was so obtained cannot recover it from the person to whom it was paid on the existing debt, nor compel that person to account for it. Lime Rock v. Plimpton, 17 Pick. 159; Merchants v. Abbott, 131 Mass. 397; Moore v. Moore, 127 Mass. 22; Le Breton v. Peirce, 2 Allen, 8; Stephens v. Board, 79 N. Y. 183, 187; Newhall v. Wyatt, 139 N. Y. 452, 454; Nassau v. National, 159 N. Y. 456; Baltimore v. Burke, 102 Va. 643; Tanner v. Lee, 121 Ga. 523, 525; Burnham v. Holt, 14 N. H. 367; Dwinel v. Sawyer, 53 Me. 24; Young v. Dibrel, 26 Tenn. 270.

*Koon, Whelan & Bennett, Koon, Whelan & Hemstead,* and *Lancaster & McGee,* for respondent.

ELLIOTT, J.

This action was brought by Andrews & Gage, the appellants, against the Northwestern National Bank to recover the sum of $926.72

which the bank charged against their account because of the cashing of a check upon which the name of the payee was forged.

The parties stipulated, and the court found, in substance:

That Andrews & Gage were engaged in the grain and grain elevator business in the state of Minnesota, and during the time covered by the transaction in question operated an elevator for the purchase, handling, and storage of grain at Berlin, North Dakota. That during said time and until about October 27, 1905, one P. T. Langdon was an employee and agent of Andrews & Gage at Berlin in charge of their elevators there, and as such employee and agent engaged in purchasing, storing, and shipping wheat and other grain at Berlin. That Langdon had power and authority from Andrews & Gage to purchase wheat and other grain from the farmers in the vicinity of Berlin, and to store it in the elevators and ship it to Andrews & Gage at Minneapolis and other markets, and pay for or make advances on the grain so purchased with money furnished by Andrews & Gage for that purpose, or by delivering to the vendor of such grain the checks of Andrews & Gage furnished to him by them for that purpose. But he had no authority to sign or indorse any check made by, or on behalf of, Andrews & Gage, nor to indorse any draft made by or upon them, nor to sign drafts on their behalf in the course of the business or otherwise.

On or about September 23, 1905, Andrews & Gage made a certain check for $926.72 payable to Z. W. Thomas or order. This check was drawn upon the Northwestern National Bank at Minneapolis, and was mailed by Andrews & Gage to Langdon at Berlin, North Dakota, with instructions to deliver it to Z. W. Thomas if it was then due and owing to him for grain theretofore received by Andrews & Gage from him. Langdon received the check with the instructions, but, instead of delivering the check to Thomas, he, without the knowledge or consent of Andrews & Gage, on October 6, 1905, presented it to the State Bank at Berlin, North Dakota. Before such presentation, Langdon, without any authority, indorsed the name of Z. W. Thomas on the back of the check. At the request of Langdon, the State Bank of Berlin then placed the amount of the check to the credit of an account then opened by Langdon in that bank in the name of P. T. Langdon & Co. The State Bank of Berlin took the check, and credited the

amount thereof to P. T. Langdon under the name of P. T. Langdon & Co. There was no firm or partnership or corporation of that name, and the name was assumed by Langdon for the purpose of that account only. Thereafter, on October 17, 1905, Langdon deposited the further sum of $380.25 in the account. No other deposits were made to the credit of that account. Thomas never received any of the proceeds of the check.

The State Bank of Berlin after receiving the check indorsed the same, "Pay any bank or banker or order, prior indorsements guaranteed, State Bank of Berlin, Berlin, North Dakota, F. F. McGuire, Cashier," and delivered it to the First National Bank of Crystal Lake, Minnesota, and received from the bank either in cash or credit the amount of the check. That bank delivered the check to the National Citizens' Bank of Mankato with a similar indorsement, except the words, "Prior indorsements guaranteed," and received from it the amount of the check either in cash or credit. The National Citizens' Bank of Mankato delivered the check to the First National Bank of Minneapolis with a similar indorsement, and received from it the amount of the check in cash or credit. The First National Bank of Minneapolis presented the check for payment to the Minneapolis Clearing House on October 9, 1905, and the Northwestern National Bank received the check through the clearing house in the usual method, and paid to the First National Bank of Minneapolis the amount thereof either in cash or in credit, and charged the amount of the check upon its books to the account of Andrews & Gage.

The State Bank of Berlin on October 6, 1905, received the check, supposing and believing that the indorsement thereon was a valid and proper one, and neither the First National Bank of Lake Crystal, the National Citizens' Bank of Mankato, the First National Bank of Minneapolis, nor the respondent, the Northwestern National Bank, had any knowledge that the first indorsement on the check was not genuine, valid, and proper until on or about May 17, 1906. Each and all of these banks received, accepted, and paid the check in the ordinary and usual course of business, and without any knowledge that the indorsement of the name of Thomas was not genuine and properly authorized. The State Bank of Berlin learned that it was not the genuine indorsement of Thomas on or about October 27, 1905. The account opened

with the State Bank of Berlin by P. T. Langdon in the name of P. T. Langdon & Co. was not opened under the direction or with the knowledge of Andrews & Gage.

On October 27, 1905, Andrews & Gage demanded of Langdon certain moneys which they asserted he should account for. He thereupon informed them that it was in the bank to their credit, except about $79, which he then paid, and handed to them a bank pass book of the State Bank of Berlin in their name, showing that Andrews & Gage had to their credit in that bank the sum of $1,003.01. The fact was that, although not then known to Andrews & Gage, Langdon had on the same day drawn a check for $1,003.01 on the P. T. Langdon & Co. account, and had it credited to the account of Andrews & Gage in said bank and charged against the account of P. T. Langdon & Co. When Andrews & Gage received this bank book showing that they had a credit of $1,003.01 at the State Bank of Berlin, they were not aware that it was to any extent the proceeds of the Thomas check. On November 9 Langdon withdrew the balance left to the account of P. T. Langdon & Co. from the State Bank of Berlin. After receiving the bank book, Andrews & Gage made other deposits in the account so opened in their name by Langdon, and prior to January 1, 1906, checked out of said account all the moneys so deposited by them and by Langdon. The check of $1,003.01 was given by Langdon to Andrews & Gage in settlement of a shortage known on October 27, 1905, and for no other purpose and upon no other consideration. Shortly prior to October 27, 1905, Andrews & Gage were informed by Thomas that he had not received the check in question, nor indorsed the same. At that time they had the check with all the indorsements thereon in their possession. Prior to the delivery of the bank pass book to Andrews & Gage, Langdon stated to them that he was the agent of Thomas, and had authority to indorse the check. The sum of $1,003.01 owed by Langdon to Andrews & Gage was in addition to, and exclusive of, any liability on his part to the firm for said check or the money received from it.

Upon these facts the trial court found that Andrews & Gage were not entitled to recover the amount of the check from the Northwestern

National Bank, and the correctness of this conclusion is the only question involved upon this appeal.

The facts present a rather unusual condition of affairs, but we are satisfied that the court reached the proper conclusion. The appellants contend that as depositors they were creditors of the Northwestern National Bank to the extent of their balance therein, and entitled to disregard any charge made against their account which was not authorized by them or made by reason of their negligence or other misconduct. The correctness of this general proposition cannot be questioned, but nevertheless Andrews & Gage are not in a position to require the Northwestern National Bank to credit their account with the amount of this check. The appellants make an ingenious argument, but the result which they desire to bring about would be so unjust and inequitable as to suggest that a fallacy lurks somewhere in the process of reasoning. The appellants have not been injured by the fact that the Northwestern National Bank paid this check upon a forged indorsement, and their theory, if accepted, would merely result in substituting the bank for the defaulting employee as the creditor [debtor] of Andrews & Gage. The check for $926.72 came into Langdon's hands on October 6, 1905, and with it he opened an account with the State Bank of Berlin in the name of P. T. Langdon & Co. Ten days later he deposited an additional sum of $380.25 in the account, making a total of $1,306.97. On October 27, 1905, he drew a check on the account of P. T. Langdon & Co. for the sum of $1,003.01, and deposited it in another account in the same bank in the name of Andrews & Gage.

The result of all this juggling was that the $926.72, the proceeds of the check with the forged indorsement, and an additional $76.29 from some other source, went into the new Andrews & Gage account. Langdon was then short in his accounts with his employers, Andrews & Gage, and when on October 27, 1905, they made a demand on him for a settlement, he responded by turning over to them the account in the State Bank of Berlin which he had evidently created for that purpose. That is, Langdon was short in his accounts, and had no money with which to pay. The check for $926.72 which was delivered to him by Andrews & Gage to be used in paying Thomas was in effect cashed by him. With the proceeds which still belonged to Andrews &

Gage or to the Northwestern National Bank, Langdon assumed to pay his debt to Andrews & Gage. It does not appear that at that time Thomas was entitled to the check, and it was sent to Langdon for delivery to Thomas upon certain conditions. If Langdon had forged the indorsement and himself presented the check to the Northwestern National Bank and secured the cash, carried it to the office of Andrews & Gage, and handed it to them in settlement of his shortage, the situation in legal effect would have been identically the same as at present. Andrews & Gage could have put the money in the bank. They would have had Thomas' wheat, and still owed him for the same. The forged check would have been where it now is, Langdon would still have been short in his accounts, and the net result of the entire transaction would have been the liability of Langdon for prosecution for forgery.

We cannot see that the fact that this business was transacted by the use of credits, instead of the handling of actual cash, makes any difference so far as the liability of the Northwestern National Bank is concerned. It paid the check upon a forged indorsement, and thereby became liable to its depositor for any damages thereby sustained by him. If the depositor lost nothing, he should recover nothing. If a forged check for $100 on B.'s account is paid to A., and A. immediately on being caught hands the money back to B., it would not be claimed that B. could sue the bank and recover the $100 which had been wrongfully charged to his account. Again, suppose A. in the employ of B. owes B. $100 which B. cannot collect. A. is given a check on the bank payable to D., with instructions to deliver it to D. Instead of doing so, he forges the payee's name, draws the money from the bank, and with it pays his debt to B., and receives a receipt in full. Can B. collect $100 from the bank? If so, it would be quite easy for A. and B. to arrange for the bank to pay A.'s debt to B., leaving B.'s account unimpaired. Of course, A. might take some chances of criminal prosecution, but Langdon was willing to assume the chances in this instance in order to square his account with his employers.

The result of the entire transaction is that the money started with Andrews & Gage, and, after passing around the circle, came back to them. The fact that credits, instead of cash were used, does not change the legal effect. Langdon's debt to them is to that effect un-

paid. There is nothing in this record which shows that the appellants were damaged; and the order of the trial court is therefore affirmed.

LEWIS, J.

The mere fact that appellants received the proceeds of the check from Langdon would not prevent recovery. If appellants had been misled and had lost an opportunity to otherwise collect their claim from Langdon, then in my judgment the defense here urged would not be tenable.

But I concur in the view that appellants cannot recover unless they were damaged as a result of the transaction, and that no damage has been shown. Although the court found that appellants had no knowledge or information that the money received from Langdon was to any extent the proceeds of the check, yet the court also found that they had the check with all the indorsements in their possession, and knew that Thomas had never received it, and had not indorsed it, and that Langdon had indorsed it, claiming to be the agent of Thomas. It seems reasonably clear that appellants were in possession of all of the facts, and could readily have ascertained by an examination of the bank book that the money paid them by Langdon was the proceeds of the check. If appellants knew that Langdon had forged Thomas' name, and had drawn the money on the check from the local bank, they had every reason for believing that the money placed to their account in the pass book was that identical money. In receiving the money thus paid out by the local bank, appellants ratified the indorsement, and consented to its collection from the bank upon which the check was drawn.

I concur in the result.

On October 2, 1908, the following order was filed:

PER CURIAM.

In a petition for reargument the point is made that when Langdon drew the $1,003.01 from the account of $1,306.97, which stood in the name of P. T. Langdon & Co., he must be presumed to have drawn $380.25 of his own money and only that portion of the remainder made up of the $926.72 check which was necessary to make the total of $1,003.01, and that therefore Andrews & Gage received back but a part

of the proceeds of the check. If this is the correct view, Andrews & Gage received back but $622.75 of the $926.72, and should recover the balance of $303.97 from the bank. A reargument on briefs is granted on this question only.

On February 26, 1909, the following opinion was filed:

PER CURIAM.

A reargument upon this issue was granted in this case and briefs were duly filed by the parties. After considering the matter fully, we find no reason for changing the decision heretofore filed in this case and the same is hereby adhered to.