THE HON. WILLIAM L. HOLLOWAY,
THE HON. ALBERT J. GALEN,
THE HON. ALBERT P. STARK,
THE HON. JOHN A. MATTHEWS, } Associate Justices.

---

UNION BANK & TRUST CO., APPELLANT, *v.* LYNN ET AL., RESPONDENTS.

(No. 5,709.)

(Submitted May 22, 1925. Decided June 3, 1925.)

[237 Pac. 490.]

*Promissory Notes—Payment—What Constitutes.*

1. Defendant executed his promissory note to a bank which without his knowledge transferred it to another bank as collateral for an existing indebtedness. No demand was made upon him for payment by the holder prior to the date on which, some thirty days after maturity, defendant paid the note to the bank to which he had given it, he then being informed that it was no longer in the payee's possession but would be returned shortly and a copy of it was delivered to him marked "Paid." The amount received was sent to the holder bank and by it credited to the remitting bank's indebtedness, and the former then brought suit on the note on the theory that payment had not been to it as its holder and that it did not know that it had received the money. There was testimony that the payee bank had advised plaintiff that the note had been paid and asked for the return of the note. *Held,* that plaintiff having received the

(473)

amount to which it was entitled on the note, it was fully paid not-withstanding its ignorance that the remittance was intended as payment of it.

---

Bills and Notes, 8 C. J., sec. 835, p. 599, n. 81.

*Appeal from District Court, Powell County; George B. Winston, Judge.*

ACTION by the Union Bank & Trust Company of Helena against Oscar Lynn and another. From a judgment of dismissal, plaintiff appeals. Affirmed.

*Mr. S. P. Wilson,* for Appellant, submitted a brief and argued the cause orally.

The defense upon the merits in this case is a plea of payment and it is clearly shown that the makers of the note made a payment to the First State Bank of Ovando which was intended by the makers of the note to be applied as full payment thereof. The rule of law is overwhelming that the maker of a promissory note must pay the same to the holder in order to discharge the instrument, and that payment to any other than the holder is at the risk of the payer. (8 C. J. 598, sec. 835.) This is a fair rule, because the payer, by the exercise of ordinary care, can fully protect himself by the simple process of requiring the production of the note when he makes payment. On the other hand, the holder, other than the original payee, has no means of protecting himself, and it is the quality of a negotiable instrument that the possession of the instrument carries with it all the attributes of ownership. The case of *State Nat. Bank* v. *Hyatt,* 75 Ark. 170, 112 Am. St. Rep. 50, 5 Ann. Cas. 296, 86 S. W. 1002, is almost identical with the present. The case itself, and the note reviews the decisions upon the subject, and is a more complete brief than could be written here. *Smith* v. *Jarman,* 61 Utah, 125, 211 Pac. 962, reviews all the decisions, making full reference to *Dodge* v. *Birkenfeld,* 20 Mont. 115, 49 Pac. 590, and states the rule unqualifiedly that in the case of a negotiable instrument

payment can only be made to the holder; see, also, *Hayden* v. *Speakman*, 20 N. M. 513, 150 Pac. 292, citing Daniels on Negotiable Instruments, sixth edition, 1227. The court say: "Appellee was guilty of gross negligence in making payment to Hayden without demanding the production of the note and securing proper credit thereon."

The foregoing decisions so completely review the law upon the subject, that further citation of authorities would be superfluous.

*Messrs. Keeley & Keeley,* for Respondents, submitted a brief; *Mr. W. E. Keeley* argued the cause orally.

The note in question was paid on May 3, 1921. (See *Coleman* v. *Jenkins*, 78 Ga. 605, 3 S. E. 444; *Second Nat. Bank* v. *Spottswood*, 10 N. D. 114, 86 N. W. 359; *Andrews* v. *Northwestern Nat. Bank*, 107 Minn. 196, 25 L. R. A. (n. s.) 996, 117 N. W. 621, 780, 122 N. W. 499; *Bayley* v. *Hamburg,* 106 Wash. 177, 179 Pac. 88.)

"The owner [of the note] may, by subsequent ratification of payment to one who had no authority to receive it, render it sufficient and binding, as by receiving the proceeds." (8 C. J. 596; *Stuart* v. *Stonebraker,* 63 Neb. 544, 88 N. W. 653.)

The Ovando Bank was the agent of plaintiff. (18 C. J. 593: *Morgan* v. *Neal,* 7 Idaho, 629, 97 Am. St. Rep. 264, 65 Pac. 66; *Fowle* v. *Outcalt,* 64 Kan. 352, 67 Pac. 889; *Easton* v. *Littooy,* 91 Wash. 648, 158 Pac. 531; *Seibold* v. *Ruble,* 41 Okl. 267, 137 Pac. 696; *Walmer* v. *Redinger,* 116 Kan. 580, 227 Pac. 329; *Hamlin* v. *Nace,* 99 Kan. 286, 161 Pac. 655.)

MR. JUSTICE MATTHEWS delivered the opinion of the court.

Plaintiff commenced this action to recover on a negotiable promissory note, indorsed and delivered to it prior to maturity by the payee. Defendants in their answer allege facts which they contend establish payment of the note, which allegations are denied by replication.

The facts sufficiently appear from the opinion. A jury trial was waived, and, after hearing all of the evidence, the court entered judgment dimissing the action, from which judgment this appeal is prosecuted.

Plaintiff contends that the judgment is not supported by the [1] evidence and is "against law." There is little conflict in the testimony, from which it clearly appears that on September 27, 1920, defendants, for value, made and delivered to the First State Bank of Ovando their note in the usual form, for the sum of $934.08, payable six months after date at said bank. On February 7, 1921, this bank indorsed and delivered the note, with many others, to plaintiff as collateral security for then existing indebtedness, current loans and future advancements, and plaintiff so held the note at the time of commencement of suit. It cannot be disputed that by this transaction plaintiff became the holder of the note for value and in due course. (Secs. 8434 and 8459, Rev. Codes 1921.)

Defendants had no notice of the transaction, and no demand for payment was made upon them by plaintiff prior to May 3, 1921, on which date, more than thirty days after maturity, Oscar Lynn, one of the makers, presented to the Ovando bank a check on an outside bank, payable to Lynn Bros., for the sum of $1,200. Scott K. Cassill, cashier, accepted the check, credited Lynn Bros. with the principal and interest due on the date, amounting to $942.97, and delivered to Lynn a copy of the note, marked "Paid," and annoted, "Original note to be returned," and told him that the original was in Helena, but would be returned in four or five days. He credited Lynn Bros.' open account with the difference between the amount of the note and the amount of the check.

Evidently assuming that the foregoing facts are all that are material to the case, counsel for plaintiff contends that such payment did not discharge the debt, citing *State Nat. Bank* v. *Hyatt,* 75 Ark. 170, 112 Am. St. Rep. 50, 5 Ann. Cas. 296, 86 S. W. 1002; *Smith* v. *Jarman,* 61 Utah, 125, 211 Pac. 962; *Hayden* v. *Speakman,* 20 N. M. 513, 150 Pac. 292; *Dodge* v.

*Birkenfeld,* 20 Mont. 115, 49 Pac. 590, and Daniels on Nego-tiable Instruments, 6th ed., 1227.

Under facts so far disclosed, the supreme court of Arkansas held, in the *Hyatt Case,* which counsel states is almost identi-cal with this, that: "The fact that a note is made payable at a particular bank does not, of itself, make the bank the agent of the payee or holder to receive payment, and payment to a bank of the amount due on a note made payable there, when the bank does not have possession of the note or authority to collect it, does not discharge the maker; for under such cir-cumstances the bank will be treated as the agent of the maker and not of the holder." There is no question but what this is the correct rule of law on the facts to which it is applied, and is in harmony with the declaration of this court in *Dodge* v. *Birkenfeld,* above, where it is said: "Both principal parties are innocent. The only difference in their respective attitudes before the court is that Mrs. Dodge was not imprudent in the management of her interest, while Mr. Birkenfeld was in his. Under the circumstances of the case, the law is that defend-ant should lose by the unfaithfulness of Wallace & Thorn-bourgh, rather than that plaintiff should." It is but the application of the maxim found in our jurisprudence that: "Where one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer." (Sec. 8772, Rev. Codes 1921.)

In each of these cases the plaintiff suffered a loss, but here additional important facts were adduced, which render the strict rule announced inapplicable.

On the day Lynn made payment to the Ovando bank, Cassill, the cashier remitted $1,215 to plaintiff, the $1,200 being the Lynn Brothers' check; so that, through the Lynn transaction of that day, the indebtedness of that bank to plain-tiff received the full credit for the amount due on the Lynn Bros. note, and the additional amount deposited to their credit in the Ovando bank. The plaintiff, therefore, received exactly what it would have received had it collected the note from

Lynn Bros., or had Lynn paid the amount personally to plaintiff in Helena; had this been done, plaintiff would have canceled and returned the note. Plaintiff does not contend otherwise, nor does it show that it would not thereafter have treated the Ovando bank and its indebtedness just as it did. At that time the Ovando bank had a substantial overdraft, in addition to its direct indebtedness; but the evidence shows that this condition continued throughout the period during which the Ovando bank was a going concern, and there is no intimation in the testimony that plaintiff would have refused such further credit, had it known that the bulk of the remittance on that day was from the Lynn collection, and not funds belonging to the Ovando bank. Plaintiff's only contention is that it did not know that the Lynn payment was included. On this point Cassill testified for defendants that, on the same day that the remittance went forward, he wrote plaintiff advising its officials that the Lynn note had been paid and requested them to return the note for delivery to the makers. These officials do not dispute this statement directly, but testified that they were unable to find such a letter in their files; they do not claim that, had they received such notice and request, they would not have credited the amount on the collateral as well as on the indebtedness of the bank and returned the note as paid.

On May 12, 1921, at the request of defendants, Cassill, in a letter, requested the return of other notes for delivery to the makers, as payment had been made, advised plaintiff that the Lynn note was paid, and requested its return. No explanation is made as to why the note was not then returned; the evidence merely being that the carbon copy of their answer to the letter could not be found in the files. It appears from the testimony that this matter was handled by the Ovando bank in the same manner as other notes which the plaintiff held as collateral. Customers would call at the bank and pay their notes, and the cashier would tell them that the note would be delivered in a few days; he would remit the amount to

plaintiff and request the return of the paid note, and the request would be complied with. Defendants knew of this custom, and past transactions of their own had been so handled. Had the defendants known that the plaintiff was the holder of the note, and acted with full knowledge of, and in reliance upon, the manner in which plaintiff permitted the Ovando bank to transact its business, they might still have been protected on the theory that the Ovando bank was the ostensible agent of the plaintiff. (Sec. 7933, Rev. Codes 1921; 8 C. J. 596; *Exchange Nat. Bank* v. *Johnson* (C. C.), 30 Fed. 588.)

But it is not necessary in this case to seek to apply the law of agency. The plaintiff lost nothing in the transaction, and was, at the time of the commencement of the action, merely the holder of an uncanceled note which had been paid, which it contends it is entitled to collect by reason of the fact that the payment was not legally made to it, and that it did not know that it had received the money. An almost identical situation is shown to have existed as the basis of the action of *Coleman* v. *Jenkins,* 78 Ga. 605, 3 S. E. 444, where the court, in disposing of the contention, said: " 'He that thinks he is robbed, but having in his own purse what he thought was stolen, is not robbed at all.' When one gets his due ignorantly, if he is not hurt by his ignorance, it is the same as if he acted with knowledge. Thus, when a negotiable promissory note was transferred before maturity as collateral, and was afterwards paid off,  *  *  *  not to the holder, but to the payee, who collected without authority, and  *  *  *  transmitted the proceeds to the holder as his own money, and the holder applied the same to the secured debt only, not applying it also to the collateral, and not knowing that he was dealing with a fund derived from the collateral, this was a discharge of the collateral debt, notwithstanding such ignorance on the part of the holder."

In the case of *Second Nat. Bank* v. *Spottswood,* 10 N. D. 114. 86 N. W. 359, one McLaughlin, having assigned a note

made by the defendant, thereafter collected the amount due on the note, without authority from the holder, and remitted it with other funds, all of which were applied on his indebtedness to the plaintiff bank, without notice that the proceeds from defendant's note were included in the remittance. The court asked, and answered, the following question: "Was it necessary, under the circumstances as they are shown to have existed, for McLaughlin to designate to plaintiff the source from which he got the $1,000 to entitle these defendants to the benefit of their payment? We know of no rule of law or business imposing such a requirement. * * * Had he so stated, or had defendants paid their money to the plaintiff personally, the debt to plaintiff would have been reduced by the same amount that it was actually reduced by the payment made through McLaughlin, and no more. Defendants would have canceled their note by such payment, * * * and, upon every principle of justice, it would seem they are entitled to that relief.''

The same principle is invoked in *Andrews* v. *Northwestern Nat. Bank,* 107 Minn. 196, 25 L. R. A. (n. s.) 996, 117 N. W. 621, 780, 122 N. W. 499; *Bayley* v. *Hamburg,* 106 Wash. 177, 179 Pac. 88; *Stuart* v. *Stonebraker,* 63 Neb. 544, 88 N. W. 653.

We are of the opinion that, under the circumstances disclosed in this case, it is immaterial whether the Ovando bank had authority to collect the amount due on the note or not, so long as the proceeds of the note so held as collateral reached the hand of the holder and were applied upon the indebtedness the note was pledged to secure. The plaintiff having received the full amount to which it was entitled, and the defendants having parted with that amount, the note was fully paid and satisfied on the third day of May, 1921.

2. After the case was at issue, one Antone Jacobson, who was a director and vice-president of the Ovando bank up to the time it closed in August, 1921, was called upon by the plaintiff to make the balance due plaintiff from that bank good on his director's guaranty. This was done, and the

note in question was turned over to counsel for Jacobson. Counsel for plaintiff then withdrew from this case and Jacobson's counsel was substituted. It is now contended that Jacobson should be subrogated to the rights of the plaintiff herein. On this contention it is sufficient to say that, as the plaintiff had received all that it was entitled to long prior to this transaction, it had nothing to transfer to Jacobson, and on the trial had no right to which Jacobson might have been subrogated, if subrogation is possible in such a case.

The judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN and STARK concur.

MR. CHIEF JUSTICE CALLAWAY, being absent on account of illness, did not hear the argument and takes no part in the foregoing decision.