UNION FINANCE COMPANY, a corporation, Plaintiff-Appellant,

v.

NATIONAL BANK IN NORTH KANSAS CITY, a national banking corporation, Defendant-Third Party Plaintiff,

v.

NORTH KANSAS CITY STATE BANK, a corporation, Third Party Defendant-Respondent.

No. 25421.

Kansas City Court of Appeals, Missouri.

Dec. 7, 1970.

Motion for Rehearing and/or Transfer to Supreme Court Denied Feb. 1, 1971.

H. Michael Coburn, Kansas City, for appellant.

Billy S. Sparks, Kansas City, for respondent.

BROADDUS, Special Commissioner.

The petition in Conversion filed in this case on August 9, 1968, by plaintiff, Union Finance Company, alleges that the plaintiff made a loan to one Stuart Holm and one

Dorothy Holm, husband and wife, and then drew a check payable to Stuart Holm and Dorothy Holm, on defendant National Bank in North Kansas City, in the amount of $2,017.00; that the check was presented and paid by the drawer; that the endorsement of Stuart Holm thereon was forged; that the drawee bank, National Bank of North Kansas City, converted said check and that the plaintiff thereby sustained a loss in the amount of said check, to-wit, $2,017. Defendant National Bank of North Kansas City filed its third-party petition against the North Kansas City State Bank, third-party defendant alleging that the third-party defendant had endorsed said check guaranteeing all prior endorsements and was therefore liable to the original defendant should the original defendant be liable to the plaintiff. Answer was filed by the third-party defendant, consisting of a general denial and further stating that plaintiffs' petition failed to state a cause of action and further stating that the endorsements were effective under the Uniform Commercial Code. Thereafter, third-party defendant (respondent) filed Requests for Admissions and Interrogatories to the plaintiff (appellant). Based upon the admissions to the requests (by reason of no denial) and the answers to interrogatories and pursuant to Rules 59 and 74.04, V.A.M.R., third-party defendant (respondent) filed a Motion for Summary Judgment against third-party plaintiff and against plaintiff (appellant). The trial court considered various briefs, heard oral arguments and then entered its order and judgment sustaining the Motion for Summary Judgment. Various after judgment motions were filed, hearings had and a final judgment was entered. Thereafter and within the time allowed by law, plaintiff filed its notice of appeal to this Court.

The facts are: On August 1st, 1966, one Dorothy I. Holm was married to a Stuart N. Holm and they were living at 4736 North Topping, Kansas City, Missouri. Mrs. Holm had borrowed money from plaintiff Union Finance Company approximately ten times in a period of six years.

Mrs. Holm requested a loan on approximately August 1st, 1966, stating that she desired the money so that she and her husband might take a vacation and redecorate her home. Persons employed by plaintiff examined the furniture in the home in order that a security agreement on the furniture might be obtained.

No one from the Finance Company had ever had any business dealings with Stuart Holm. He had not borrowed from it or signed any loan papers previously. Union Finance requested Mrs. Holm to obtain the signature of Stuart Holm on a promissory note, chattel mortgage and a list of household items. The household items were to be collateral for the repayment of the loan. Mrs. Holm took the note, chattel mortgage and list to obtain the signature of Mr. Holm. She then brought the note, chattel mortgage and list back to Union Finance containing the purported signature of Mr. Stuart N. Holm. No statement was made by her that she was authorized to sign these on behalf of Stuart Holm, and Union Finance thought these documents contained Stuart Holm's signature. For and on account of the promissory note and security agreement, Union Finance then issued its check in the amount of $2,017.73, payable to Dorothy I. Holm and Stuart N. Holm. This represented the proceeds of the loan. The loan itself was for $3,020.34; the amount of the note was $3,672. The check was for only $2,017.73.

Stuart Holm did not sign the note. He did not sign the chattel mortgage. He did not sign the list of household goods. Nor did he authorize his signature on these.

Mrs. Holm took the check showing endorsements by both Mrs. Holm and Mr. Holm to the North Kansas City Bank which endorsed it and delivered a Bank Money Order in the same amount to her. She in turn deposited $1,000 from the Bank Money Order in a joint account at the defendant National Bank of North Kansas City standing in the name of Mr. and Mrs. Stuart Holm. The check drawn by plaintiff went

through banking channels and was paid from the plaintiffs' account at the National Bank of North Kansas City.

Later, at some date subsequently, plaintiff discovered that Stuart N. Holm had not signed nor authorized his signature on the note, chattel mortgage and list of household goods; had not endorsed the check nor authorized his signature on the check.

The facts in this case are simple as is shown by the answers to the interrogatories, the request for admissions and the petition filed herein. The only question involved is whether, under the particular facts as shown by these answers, the admissions and the petition, the plaintiff Union Finance Company (appellant) can recover.

We agree with the conclusion reached by the trial court that the loss to the plaintiff-appellant, if any, was caused by the forgery of Stuart N. Holm's name to the promissory note and security agreement giving rise to the issuance of the check and was not caused by the unauthorized endorsement on the check.

Judge Duncan, in the case of Commercial Credit Corporation v. Empire Trust Company, D.C., 156 F.Supp. 599 and affirmed by the United States Court of Appeals Eighth Circuit, Commercial Credit Corporation v. Empire Trust Co., 260 F.2d 132, had before him almost precisely the same situation. The Court of Appeals opinion was written by Judge Matthes, formerly a distinguished member of the St. Louis Court of Appeals. In that particular case a check was made payable to Howard A. Beach and Mary L. Beach. Mrs. Beach's signature on the security agreement and a promissory note was forged but in reliance thereon the Commercial Credit Corporation issued its check payable to both of them. Mrs. Beach did not endorse the check but it was endorsed by someone else. The Commercial Credit Corporation later learned that the check was not endorsed by Mrs. Beach and filed suit against the drawee bank, which had deducted the amount of the check from the Commercial Credit Corporation. Judge Duncan reviewed the various cases and stated:

"Even if Mrs. Beach had signed the check, the proceeds would have gone to exactly the same person and had been used for the same purpose and the plaintiff would have still been faced with the question of a forged contract and note in its attempt to force liability against Mrs. Beach. * * *

"So far as Mrs. Beach's liability was concerned in the negotiations for the loan, it was to be measured by the terms of the contract to be signed by her and as comaker of the note. It was to these documents, and to them alone, that plaintiff could base its right to recover against her. * * *

"The conclusion is inescapable that plaintiff's inability to impose legal liability upon Mrs. Beach resulted from forgery of her signature to the documents to which her purported and intended liability was fixed."

The court further stated:

"Plaintiff's loss resulted from the forged endorsement upon the contract and note, and not because of the cashing of the check."

Judge Duncan relied heavily upon the case of Provident Savings Bank and Trust Co. v. Fifth-Third Union Trust Co., 43 Ohio App. 533, 183 N.E. 885, where almost the same state of facts was before the court. In that case The Ritz American Ice Cream Company drew a check upon the Fifth-Third Union Trust Company payable to James and Susie Eatrides and it was sent to James Eatrides. The check was paid by Provident Savings Bank and Trust Company, stamped with its name as endorser and transmitted through the clearing house to Fifth-Third Union Trust Company which paid it and charged it to the account of the Ritz American Ice Cream Company. The check was made payable as consideration for a note and

chattel mortgage which the ice cream company supposedly obtained from the Eatrides. The note and mortgage bore the signatures of James and Susie Eatrides and the check when presented to the bank bore their signatures as endorsers. Later Susie Eatrides alleged that her signature on the note and mortgage was a forgery and that she had not endorsed the check. The Court stated:

"What loss has the drawee bank, the Fifth-Third Union Trust Company, suffered in the instant case? It claims to have credited its depositor with the amount of the check. It can only assert such payment as a loss if it was legally forced to make good a loss to the depositor.

"What loss then did the Ritz American Ice Cream Company, the depositor, suffer by reason of the forged endorsement upon the check? None. *Its loss is due to the forgery upon a note and mortgage, which prevents it from collecting from the party whose name it is claimed was forged. The loss on the note and mortgage would have been the same as it would have been had the check not been endorsed by forgery.* * * * We are not concerned with the loss of the Ice Cream Company through its own negligence in accepting a forged note and mortgage; or that it cannot now collect upon such note and mortgage against the responsible maker whose name was forged. What we are concerned with is the loss of the Ice Cream Company by reason of the forged endorsement upon the check, and, exclusive of the note and mortgage putting them out of consideration, we cannot see where the Ice Cream Company suffered any loss whatever by reason of the forged endorsement upon the check.

" * * * As far as the record shows, the position of the Ice Cream Company would be the same were the check endorsed by Susie Eatrides. The only loss evident from the record is to Susie Eatrides, who states she never received any of the proceeds of the check. She is not making any claim, and can make no claim, upon a check in which she had no interest and which she states she never knew existed."

Thus, where a case such as the one at bar has arisen the Courts have held that there could be no recovery because the loss was caused by the failure of the second party, whether it be Mrs. Beach, or Mrs. Eatrides, or Mr. Holm, to have signed the promissory note and security agreement upon which the various lendors would have attempted to collect from those persons if the notes and security agreements had not been forged.

A similar case is the case of Public Loan Corporation of Warren v. Jacobs (Ohio App.), 144 N.E.2d 505. In that case the plaintiff made a loan to James Russell and a person purporting to be his wife, Helen Russell. One Frank Jacobs executed the promissory note as comaker. The wife's signature was a forgery but Jacobs did not know that the wife's signature had been forged. The husband absconded and the plaintiff then attempted to recover from Jacobs on the promissory note which he had executed as comaker. The court held that Mr. Jacobs could not be held liable on the promissory note. The court held that:

"Plaintiff furnished defendant Russell the means of, and the opportunity to perpetrate a forgery when it could have more easily have had defendant, Helen Russell, sign such note at its office."

Consequently, the court held that Jacobs should not be liable, saying:

"The principle that, where one of two innocent persons must suffer by the fraud of a third person, he who first trusted such third person and placed in his hands the means which enabled him to commit the wrong must bear the loss is applicable."

In the case at bar, Stuart N. Holm was never contacted by the appellant Union Finance Company. The appellant gave the

**74**

promissory note and security agreement to Mrs. Holm and *requested* her to obtain the signature of her husband. Mrs. Holm brought the promissory note and agreement allegedly executed by Stuart N. Holm back to the appellant and the appellant thereupon issued the check.

The same situation is found in Lincoln Building & Loan Association v. Liberty National Bank & Trust Co., 312 Ky. 282, 227 S.W.2d 191, where forged endorsements were placed on checks. The court held that the drawee bank should not be held liable, saying:

"The whole difficulty goes back to the forging of the deed which in no way can be chargeable to appellee banks * * *.

"Clearly, then, under the facts herein and the rules above, appellant lost nothing through any fault of appellees in cashing this check. Consequently, appellant has no right of action against them."

Other cases involving such forged endorsement where the courts have held for the drawee banks include: Merchants' National Bank v. Home Building & Savings Association, 180 Ark. 464, 22 S.W.2d 15; Beeson-Moore Stave Co. v. Clark County Bank, 160 Ark. 385, 254 S.W. 667; Merchants' National Bank v. Federal State Bank, 206 Mich. 8, 172 N.W. 390; National Surety Corporation v. City Bank & Trust Co., 248 Wis. 32, 20 N.W.2d 559; Union Bank & Trust Co. v. Lynn, 73 Mont. 473, 237 P. 490; Bayley v. Hamburg, 106 Wash. 177, 179 P. 88; Andrews v. Northwestern National Bank, 107 Minn. 196, 117 N.W. 621, 780, 122 N.W. 499.

As said by Judge Matthes in the Commercial Credit Corporation case, supra:

"Under this state of facts, the conclusion is inescapable that the forged endorsement (of the check) was not the proximate cause of plaintiff's loss."

The judgment should be affirmed. Your Special Commissioner so recommends.

PER CURIAM.

The foregoing opinion by BROADDUS, Special Commissioner, is hereby adopted as the opinion of the Court, and the judgment is affirmed.

All concur.