[No. 15175.  Department One.  March 13, 1919.]

FRANK S. BAYLEY, *Appellant,* v. ARVID HAMBURG *et al.,*
*Respondents.*[1]

BILLS AND NOTES (82) — PAYMENT OF FORGED NOTE — PERSONS TO WHOM PAYMENT MAY BE MADE. Under Rem. Code, § 3414, which provides that a forged signature is wholly inoperative, unless the party is precluded from setting up the forgery, payment of notes to a bank holding under an indorsement forged by the holder's agent, discharges the note, where the holder receives the proceeds, although through his agent's dishonesty he applied the same to other accounts; since he lost nothing by the forgery.

Appeal from a judgment of the superior court for Skagit county, Brawley, J., entered May 8, 1918, upon findings in favor of the defendants, in an action upon a promissory note. Affirmed.

*A. R. Hilen* and *Herr, Bayley & Croson,* for appellant.

*W. L. Brickey* and *Thomas Smith,* for respondents.

TOLMAN, J.—Some years ago, appellant, then and ever since a resident of Seattle, became the owner of a large tract of land in Skagit county, and employed one Fitzgerald, residing in the immediate vicinity of the land, as his agent to sell the land in parcels, and collect the purchase price.  The agent was not authorized to sell except at certain list prices, or by submitting offers to appellant for approval, and

[1]Reported in 179 Pac. 88.

had no authority to sign contracts or deeds, or to discount notes.

About November 25, 1913, Fitzgerald entered into an arrangement with respondents, to whom he had previously sold another tract, by which they were to purchase a certain forty-acre tract belonging to appellant for $2,200, of which $500 was to be paid in cash on the delivery of a deed, and the remainder was to be evidenced by two promissory notes, one for $1,000, due in one year, and one for $700, due in eighteen months. Fitzgerald reported to appellant that he had sold the land on the basis of $1,200 cash and one note for $1,000, due in one year, and thus procured a deed for the land, duly executed by appellant and his wife, running to respondents as grantees. Upon receipt of the deed by Fitzgerald, he proceeded to close the transaction with the respondents by accepting the cash payment of $500, with the two notes for $1,000 and $700, executed by them, payable to the order of appellant, and thereupon made delivery of the deed. Within a day or two thereafter, Fitzgerald forged appellant's name upon the back of each of these notes, took them to the First National Bank of Mt. Vernon, and discounted them for the sum of $1,638.50. To this he added $119.60, and procured the bank to issue its cashier's check for $1,758.10, payable to F. S. Bayley, trustee, which check he delivered to appellant, who in due course received the money thereon. At the time of delivering the check, Fitzgerald reported to appellant that the check so delivered covered $1,200 cash, received from respondents on this sale, and the balance was reported as covering certain collections from other purchasers of land from appellant, which, unknown to appellant, Fitzgerald had collected some time before and appropriated to his own use.

At the same time, and as a part of the same transaction, Fitzgerald, in order to show a complete accounting of the proceeds of the sale to respondents, as reported by him, delivered to appellant a forged duplicate of the $1,000 note theretofore made by respondents and wrongfully discounted at the bank by means of the forged indorsement.

Respondents, knowing nothing of the forgeries, paid the notes at the bank in due course, and appellant still holding the forged note, which he believed to be genuine, took no steps for its collection, and obtained no knowledge of the true conditions until about the first of the year 1916. Thereafter, negotiations failing, he brought this action on the original genuine promissory note for $1,000, upon the theory that payment to the bank holding under a forged indorsement did not discharge the makers, by reason of the statute, § 3414, Rem. Code, which provides:

"Where a signature is forged or made without authority of the person whose signature it purports to be, it is wholly inoperative, and no right to retain the instrument, or to give a discharge therefor, or to enforce payment thereof against any party thereto, can be acquired through or under such signature, unless the party, against whom it is sought to enforce such right, is precluded from setting up the forgery or want of authority."

This statute is but a re-enactment of the law as it has always been; and the question to be answered here is, whether or not, under the particular facts existing in this case, appellant is precluded from setting up that the indorsement under which the bank received and discounted the $1,000 note is a forgery?

At the time of this transaction, it is evident that Fitzgerald was short in his accounts with appellant and entered into this remarkable series of crimes for

the purpose, in the main, of concealing and increasing that shortage, though he may also have intended thereby to complete this sale on terms which he thought his principal might not approve. By means of the forged note and the proceeds of the forged indorsement, he was enabled to make an apparently complete accounting of the proceeds of the sale in such a manner that discovery was not likely for a year to come; and also thereby he was able to appropriate the cash payment of $500, and procured $438.50 additional, to apply upon his previous shortage; adding to this $119.60, which he had in hand, he was able to and did remit to his principal $558.10, specifying items he intended to cover thereby, which his principal had already unknowingly lost by his dishonesty; and no doubt thus obtained time and opportunity to continue his operations.

Viewing it in another way, what did appellant receive and lose by the transaction? He received the full amount of the notes which were discounted by means of the forged indorsements, and a few dollars additional. True, he was led by the dishonesty of his agent to credit the money received otherwise, and thus he was apparently reimbursed for moneys theretofore misappropriated. But his loss on that account had already occurred, and he could and did lose nothing by the forged indorsement and discount of the notes, since he received the proceeds thereof, though no doubt he did lose through the dishonesty and misrepresentations of his agent, both as to the cash payment which was misappropriated, and also by reason of being misled as to the credits to be given to others; but these losses were not due to the forged indorsement. To hold otherwise would be to permit appellant to place upon respondents the liability of his de-

faulting agent; and by requiring them to pay again here, appellant would thus receive his money on the genuine notes a second time, or would thereby be permitted to recover upon the forged note which was delivered to him by Fitzgerald.

Industry of counsel on each side of this case has resulted in bringing to our attention but few cases thought to bear upon the question here presented; and but one case, *Andrews v. Northwestern Nat. Bank*, 107 Minn. 196, 117 N. W. 621, 780, 122 N. W. 499, 25 L. R. A. (N. S.) 996, which is based upon anywise similar facts. Under the rule there announced, and the general rule, that one can recover only that which he lost *by reason of the forged indorsements*, the judgment appealed from is affirmed.

CHADWICK, C. J., MAIN, MITCHELL, and MACKINTOSH, JJ., concur.