## BURKE COUNTY v. FIRST NAT. BANK OF BIRMINGHAM.*

### No. 7202.

Circuit Court of Appeals, Fifth Circuit.
Nov. 22, 1934.

W. H. Sadler, Jr., of Birmingham, Ala., for appellant.

Forney Johnston, of Birmingham, Ala., for appellee.

Before BRYAN, HUTCHESON, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This was an action, brought on February 8, 1933, by the appellant, Burke county, Ga., against the appellee, the First National Bank of Birmingham, to recover the sum of $121,755.21, with interest thereon. The complaint contained nineteen counts. Count 1 claimed the above-stated amount for money received by appellee to the use of the appellant in amounts and on dates set out, eighteen named sums being alleged to have been severally received by appellee on named dates between March 27, 1931, and October 1, 1932. Each of the remaining eighteen counts was for the recovery of damages for the alleged conversion by the appellee of a described negotiable check drawn on a bank by the state highway department of Georgia, seventeen of those checks being payable to the order of Burke county, Ga., and the check of latest date, September 26, 1932, for $1,440.25, being payable to the order of treasurer of Burke county, Ga. For answer to the complaint, and to each and every count thereof, separately and severally, the appellee pleaded in short by consent the general issue, with leave to give in evidence any matter which if well pleaded would be admissible in defense of the action, to have the effect as if so pleaded, including pleas of set-off and recoupment, and with leave to plaintiff (appellant here) to give in evidence any matter which would be admissible in reply to such defensive matter, including said set-off and recoupment, to have effect as if so pleaded. Upon the conclusion of the evidence the court gave the following charge requested in writing by the appellee: "If you believe the evidence you must find for the defendant." The giving of that instruction is assigned as error.

Evidence without conflict showed the following: Pursuant to a proposition which had been submitted by the board of commissioners of roads and revenue for Burke county (created by an act approved August 21, 1911, Laws of Georgia, 1911, p. 390), to the state highway department of Georgia, a contract dated December 13, 1930, was entered into between the highway department and Burke county, acting by its board of commissioners, for the construction of 15.972 miles of a described road in Burke county, the road to have a top soil surface. By the terms of that contract, the highway department was to be liable for 75 per cent. of the construction, and Burke county was to be liable for 25 per cent. thereof, and the county was to furnish and deliver all the material and do all the work provided for. On December 16, 1930, the state highway department adopted the following resolution:

"Whereas, that State Highway Department of Georgia is indebted to Burke County for contract work done on a 75%-25% basis, approximating Seventy Thousand ($70,000.00) Dollars, which is exclusive of Burke

*Rehearing denied Jan. 11, 1935.

County's participation in said work, the County having received reimbursement certificates for said participation.

"Be it resolved, that said indebtedness of approximately Seventy Thousand ($70,000.00) Dollars be repaid to Burke County at the rate of Ten Thousand ($10,000.00) Dollars per month, beginning March 15, 1931.

"Provided that said sum so repaid be applied by Burke County on the grading of the road leading from the Jefferson line to the Screven line, under the terms of the contract recently made between Burke County and the Highway Department in that behalf."

By contract entered into in December, 1930, between Burke county, designated party of the first part, and J. W. Gwin, designated party of the second part, the work of constructing the above-mentioned road was awarded to Gwin. That contract contained the following: "The said State Highway Commission of Georgia, by resolution passed Dec. 16th, 1930, a copy of which is hereto attached and made a part hereof, agreed to pay the Commissioners of Burke County, Georgia, Ten Thousand Dollars per month, provided the same is used on the aforementioned road. It being the mutual understanding of the parties hereto that compensation is to be paid to the party of the second part, solely from the said Ten Thousand Dollars monthly payment anticipated from the State Highway Commission." In June, 1931, a supplemental contract between the state highway department and Burke county was made, whereby the previously made contract for the building of said road was modified by providing for the road having a gravel surface instead of a top soil surface, with the result of adding approximately $90,000 to the cost of the road, and the highway department agreed to make an additional allotment of $90,000 for the work, to be paid monthly in amounts not exceeding $10,000. Thereafter Burke county, acting by its board of commissioners, awarded to Gwin a contract for the additional work so provided for. That contract contained the provision: "Burke County agrees to endorse and deliver to the said J. W. Gwin all checks and acceptances furnished to said County by said Highway Board authorities of the State of Georgia when and as said payments are made by the said Highway Board to the said County of Burke." Gwin proceeded to do work called for by the original and modified contract. Between March 19, 1931, and September 23, 1931, the state highway department issued seventeen checks, each of which was payable to the or-

der of Burke county, Ga., and each of those checks, after being indorsed in the name of Burke county, Ga., by Joseph Law, clerk, was transmitted to J. W. Gwin, and Gwin indorsed each of them and delivered them to the appellee. When Joseph Law, who was the clerk of the board of commissioners of Burke county, indorsed the several checks and transmitted them to Gwin, F. M. Cates, the chairman of the board of commissioners of Burke county, whose duty it was to supervise in general the county finances, knew of Law doing so. There was no attempt to conceal the fact that the checks as they were received were being indorsed and sent to Gwin. During the period when the above-mentioned checks were issued and indorsed, the First National Bank of Waynesboro was the depository of county funds of Burke county. Neither during the period covered by those checks nor at any other time was there a resolution of the commissioners of Burke county designating any particular person to indorse checks payable to the county or its order. The appellee received each of the checks for collection and credit on the account of Gwin, the credit being subject to cancellation in the event of nonpayment by the bank on which the check was drawn. Each of those checks was paid upon presentation to the bank on which it was drawn. On September 26, 1932, the state highway department issued its check for $1,440.25, payable to the order of the treasurer of Burke county, Ga. That check was indorsed by First National Bank of Waynesboro, Ga., treasurer of Burke county, Ga., by M. K. Tucker, cashier, and delivered to J. W. Gwin, who indorsed it and deposited it with the appellee, which credited the amount of it on Gwin's account, as in the case of other checks above mentioned. That check was paid upon presentation to the bank upon which it was drawn. More than the aggregate amount of all the above-mentioned checks for which appellee gave Gwin credit was paid by the appellee on checks issued by Gwin before the appellee had any notice of a claim against it in behalf of Burke county, Ga., that the indorsement in the name of the appellant of any of those checks was unauthorized, or that appellant was entitled to those checks or any of them or to the proceeds thereof. Upon the receipt by Gwin of each of the above-mentioned checks, he credited the amount of it on the indebtedness owing to him by Burke county under the above-mentioned road construction contract. At the time when each of those credits, except the one of $1,440.25, the amount of the last dated check, was giv-

en by Gwin, more was owing to him under the road construction contract than the amount so credited.

The evidence showed that the appellee as agent received from Gwin the above-mentioned checks for collection and deposit to his credit, and that appellee paid to its principal, Gwin, or on his orders, more than the aggregate amount collected on the checks before receiving any notice of a claim in behalf of the appellee that the latter was entitled to the checks or the proceeds of them. Under that state of facts, the appellee was not liable to the appellant for money received to the use of the latter. Carson v. Federal Reserve Bank, 254 N. Y. 218, 230, 172 N. E. 475, 70 A. L. R. 435; Cassimus v. Vaughn Realty Co., 217 Ala. 561, 117 So. 180; 2 C. J. 822; 41 C. J. 54. It follows that appellant was not entitled to recover on the first count of its complaint.

In support of its contention that the indorsements of the checks, other than the last dated one, were invalid because not authorized by law, appellant's counsel refer to the provision of the law of Georgia (Georgia Civ. Code 1926, § 574) that "all county funds are to be paid to, and disbursed by, the county treasurer, except such as may be specially excepted by law, and then to be collected and disbursed as specially directed"; and to the Georgia statute (Georgia Laws 1916, p. 375) abolishing the office of county treasurer in and for the county of Burke, and providing for the board of commissioners of roads and revenues of Burke county selecting a duly chartered bank of that county to act as depository of all county funds theretofore handled by the county treasurer, and for the cashier of the bank so selected discharging all the duties theretofore discharged by the county treasurer.

The funds against which the several checks were drawn were funds of the highway department, not funds of Burke county. The checks were the means of transmitting highway department funds, to be applied, pursuant to a contract between that department and Burke county, to the construction of a designated road in that county. To say the least, it is questionable whether those checks or the proceeds of them were county funds within the meaning of the above-quoted statute, with the results of requiring those checks and the proceeds of them to be deposited in the bank selected to act as depository of funds of Burke county, to be subject to be withdrawn only by the cashier of that bank, and of invalidating the above set out provision of the contract between Burke county and Gwin whereby Burke county agreed "to endorse and deliver to said J. W. Gwin all checks and acceptances furnished to said county by said Highway Board authorities of the State of Georgia when and as said payments are made by said Highway Board to the said County of Burke." For reasons indicated below, a decision of the suggested question is not necessary in this case. For the purpose of a decision of this case, it may be assumed, without being decided, that under the quoted statute the checks in question and the proceeds of them should have been dealt with, as to depositing and disbursing, as ordinary county funds of Burke county.

The claim of the appellant based on the checks other than the last dated one will be considered separately from the claim based on the last dated check. The proceeds of the checks issued between March 19, 1931, and September 23, 1931, were by Gwin credited on the debt owing to him by Burke county under the road construction contract, with the result that Burke county received the same benefit from each of those checks it would have received if the check had been duly indorsed by Burke county and delivered to Gwin pursuant to the provision of the contract between Burke county and Gwin. Though the indorsements of the checks and the collection of the amounts thereof were wrongful, no damage or loss to Burke county resulted from the wrong. Burke county was not entitled to recover more than the amount it lost by reason of the unauthorized indorsement and collection of the checks. Bayley v. Hamburg, 106 Wash. 177, 179 P. 88; Beeson-Moore Stave Co. v. Clark County Bank, 160 Ark. 385, 254 S. W. 667; Dahill v. Booker, 140 Mass. 308, 5 N. E. 496, 54 Am. Rep. 465; Colby v. Reed, 99 U. S. 560, 25 L. Ed. 484; 25 R. C. L. 1156. As to the checks now in question, the appellant was not entitled to recover anything, as it sustained no recoverable damage in consequence of appellee accepting the checks from Gwin and collecting the amounts thereof. In argument in behalf of the appellee other grounds were suggested in support of the contention that appellee was not liable to the appellant for wrongfully converting the above-mentioned checks other than the last dated one. In view of the above stated conclusion with reference to those checks, there is no occasion to consider such other grounds.

Material allegations of the count of the appellant's complaint for the conversion by

the appellee of the above-mentioned last dated negotiable check for $1,440.25 were not proved. .That check was drawn by the state highway department of Georgia on the Moultrie Banking Company, Moultrie, Ga., for $1,440.25, payable to the order of treasurer, Burke county, Ga., and before it was indorsed by J. W. Gwin and delivered to appellee for deposit and collection, was indorsed "Pay to the order of J. W. Gwin" by First National Bank of Waynesboro, Ga. (the bank selected pursuant to statute to act as depository of all county funds of Burke county), treasurer of Burke county, Ga., by M. W. Tucker, cashier, the official authorized by law (Georgia Laws 1916, p. 375) to make such indorsement. In getting from the holder thereof a negotiable check, duly indorsed by the payee, and as agent of the holder collecting the sum for which the check was given, without any notice of any invalidity of its principal's title to the check, the appellee did not wrongfully exercise dominion over another's personal property, and did not become chargeable with the commission of a tort. What the evidence showed the appellee did with reference to that check was not a wrongful conversion of it.

Uncontradicted evidence negatived the conclusion that appellant sustained any recoverable damage by the acts complained of. It follows that the above-mentioned ruling was not erroneous. The judgment is affirmed.