276 P.2d 504

Mrs. B. F. MORGAN, Plaintiff-Appellant,

v.

FIRST NATIONAL BANK IN ALBU-QUERQUE, Defendant-Appellee.

No. 5805.

Supreme Court of New Mexico.

Nov. 9, 1954.

John P. Dwyer, Richard M. Krannawitter, Albuquerque, Joseph H. Morgan, Phoenix, Ariz., for appellant.

Iden & Johnson, Albuquerque, for appellee.

SEYMOUR, Justice.

The trial court granted a motion for summary judgment and dismissed appellant's cause of action on the doctrine of damnum absque injuria. Because of the extraordinary facts of this case, it is one probably of both first and last impression.

The facts admitted for purpose of this decision are: On December 3, 1952, appellant executed and delivered to one E. H. Martin a check in her own handwriting for the sum of $16,117, payable to E. H. Martin and Company, and carrying on its face a notation, "For Purchase 100 A. T. & T. Outright." The check was drawn on the appellee, First National Bank in Albuquerque, where appellant had established her account less than an hour before this check was written. E. H. Martin was in the stock brokerage business, and appellant was dealing with him in that business capacity. On the 4th day of December, 1952, E. H. Martin presented to the Albuquerque National Bank a typewritten check dated December 4, in the exact sum of the original check, and again payable to E. H. Martin and Company, bearing a signature which purported to be that of appellant, but which in fact was a forged signature. The only differences between the two checks were the typewritten body of the forged check, the date and the fact that it bore no notation .

E. H. Martin carried two accounts in the Albuquerque National Bank, one his personal account and the other his business account styled E. H. Martin and Company. Martin requested immediate payment on the check at the time he presented it and, as a consequence thereof, the forged check was sent by messenger to the drawee bank, appellee, which paid the check out of appellant's account by issuing a cashier's check to the Albuquerque National Bank. The Albuquerque National Bank deposited the cashier's check in Mr. Martin's business account on the afternoon of the 4th of December, and in the next few days, Mr. Martin used said moneys for the payment of various personal and business obligations. At the time of the deposit, his business account balance was approximately $100. None of the deposit was used for the purchase of American Telephone and Telegraph stock.

Some days later, appellant executed and delivered to Martin a second check for $12,000 for the purchase of additional telephone stock; this check was also deposited in the business account and the funds dissipated by Martin without the purchase of stock for appellant. This check was genuine and has no bearing on the instant case unless it be to aid in the understanding of the whole transaction. The first and genuine check for $16,117, at least for the purpose of this decision, has completely disappeared. It was never cashed.

Appellant states the law to be that, "'A bank is liable to its depositor for charging his account with a forged check unless the depositor was contributorily negligent, or is estopped or has ratified the payment'", citing 9 C.J.S., Banks and Banking, § 356a, p. 730. In the instant case, there is no contention that appellant was negligent, is estopped, or did ratify payment of the forged check. Based upon the foregoing rule and these facts, appellant asserts the bank's liability to her. Appellant cites three cases: American Sash & Door Co. v. Commercial Trust Co., Mo.App., 25 S.W.2d 545, affirmed 1932, 332 Mo. 98, 56 S.W.2d 1034; Defiance Lumber Co. v. Bank of California, N.A., 1935, 180 Wash. 533, 41 P.2d 135, 99 A.L.R. 426; Stumpp v. Farmers' Loan & Trust Co., 109 Misc. 24, 178 N.Y.S. 811, affirmed 1919, 197 App.Div. 949, 188 N.Y.S. 952.

Appellee takes the following position which was adopted by the trial court in dismissing appellant's complaint. Appellant, by her first check, admittedly authorized the appellee bank to pay to E. H. Martin the sum of $16,117. The bank, in honoring the forged check did exactly that. Therefore, it is argued on behalf of the bank, that nothing it did wrongfully caused a loss to appellant and that the alleged embezzlement by Martin of this money after it was placed in his business account was the cause of appellant's loss and would have resulted without regard to whether the genuine or the forged check was presented for deposit.

In support of appellee's position, there are cited a number of cases concerning forged endorsements, in most of which cases the proceeds of the check in one way or another reached the hands of the true payee or the drawer. Under such circumstances, no recovery was had. National Surety Corporation v. City Bank & Trust Co., 1945, 248 Wis. 32, 20 N.W.2d 559; Modern Equipment Corporation v. Northern Trust Co., 1936, 284 Ill.App. 586, 1 N.E.2d 105; Provident Savings Bank & Trust Co. v. Fifth-Third Union T. Co., 1932, 43 Ohio App. 533, 183 N.E. 885; Merchants' Nat. Bank v. Home Bldg. & Sav. Ass'n, 1929, 180 Ark. 464, 22 S.W.2d 15; Beeson-Moore Stave Co. v. Clark County Bank, 1923, 160 Ark. 385, 254 S.W. 667; Bayley v. Hamburg, 1919, 106 Wash. 177, 179 P. 88; Merchants' Nat. Bank v. Federal State Bank, 1919, 206 Mich. 8, 172 N.W. 390; Andrews v. Northwestern Nat. Bank, 1908, 107 Minn. 196, 117 N.W. 621, 780, 122 N.W. 499, 25 L.R.A.,N.S., 996. From these cases appellee argues that by payment of the forged check in the instant case, the intended payee got exactly what the drawer intended him to have. This, says the appellee, constitutes a true case of damnum absque injuria.

The case is unique and the question of law a very close one. For a number of reasons, however, we believe that the contentions of appellee must fail and that the trial court was in error in dismissing appellant's complaint.

Parenthetically, we question the applicability in this case of the doctrine of damnum absque injuria. That doctrine applies to cases in which plaintiff has suffered damages from an admitted cause, but the defendant who is responsible for that cause has done no actionable wrong. 11 Words and Phrases, Damnum Absque Injuria, p. 59. In the instant case, the appellee bank, in paying out of appellant's account a forged check, certainly committed an actionable wrong against appellant. It is equally apparent that appellant has suffered severe damages. The legal question presented to us is whether appellee's wrongful act is so related as a matter of cause to the appellant's damages that liability results on the part of the bank. One of the cases cited by appellee relies in name upon this doctrine. We do not consider it applicable there or in the instant case; however, this conclusion does not dispose of the problem presented.

Our disposition of this case has been reached from the conviction that many of the most intriguing facts presented are irrelevant to a proper decision. In this connection, we are convinced: (1) The notation on the face of the original, authentic check of appellant concerning the purchase of stock, has no bearing on the case. (2) The existence of an authentic check for $16,117, which has disappeared, is of no significance in this case except to arouse speculation. (3) The fact that Martin embezzled the proceeds of the $16,117 check and of the subsequent $12,000 check is of no significance. Since all three of these factors were deemed of importance by the parties, we shall give our reasons for this statement. However, if we are correct with regard to item "(2)," it alone determines the case.

With reference to the first item mentioned above, the depositions which are a part of this record indicate, and we believe it to be a fact, that the authentic check for $16,117 would have been handled by both banks in exactly the same manner as the forged check, regardless of the notation concerning the purchase of A. T. & T. stock. In other words, Martin could have procured immediate credit to his business account just as easily with the authentic check as he did with the forged check. This being true, that difference between the two checks, in our opinion, is unimportant.

With reference to the execution and delivery by appellant to Martin of an authentic check for $16,117, the fate of which is a mystery, there are certain factors which convince us of its lack of significance in determining the legal rights here involved. Martin denies that there ever was such a check. This does not concern us because, as the case comes to us, the original execution and delivery of this check to Martin are admitted. However, from the standpoint of the appellee bank this check was not in existence at the time it honored the forged check. By this we mean that the appellee had no knowledge of the check or even of

the fact that appellant was negotiating any business with Martin. Appellee would not contest its liability for honoring the forged check if the only proof were that appellant had made up her mind to give Martin $16,117 with which to purchase stock for her. And yet in reality, the only purpose which the authentic check serves in this case is as evidence of such intention. This is at least one point at which the cases cited by appellee in support of its contention are readily distinguishable from a factual viewpoint. In each of the cases cited, the drawer actually authorized the bank to pay out certain funds, and in making payment, the bank acted upon this authorization. In the instant case the bank, i.e., the appellee, had no authorization whatsoever to pay out appellant's funds. By its analogy to the cases cited, appellee seeks to substitute for an actual authorization to pay to Martin $16,117 proof of intent on the part of the depositor to give it such authorization. To analyze all of the legal implications of this real factual difference scarcely seems profitable.

In further illustration of our conclusion: As of the time the forged check was presented for payment on December 4, there were in general terms three possibilities with regard to the status of the authentic check: (a) It had been destroyed by Martin or otherwise withdrawn from legitimate circulation; (b) it had been negotiated or cashed by Martin; (c) it was being held by Martin for future disposition.

Taking these possibilities in order: If there were no authentic check on December 4, then under the facts of this case, with no defense of negligence, estoppel or ratification, the bank's liability seems clear. This possibility is parallel and equal to the situation in which the depositor has an undisclosed intention to write a check but does not do so.

If the authentic check had been negotiated or cashed, the intention of appellant, so strongly relied upon by appellee, would have run its course, and there was clear liability on the bank for cashing the forged check.

The third alternative seems to have been the possibility accepted as true by appellee and the trial court. The record does not justify the assumption of this state of facts. Nevertheless, when it is remembered that the appellee had no knowledge of the existence of the authentic check, what possible change is made in the legal responsibility of the bank to its depositor which would relieve the bank of liability for cashing the forged check? We fail to find any controlling difference in this third situation which would accomplish this.

While we do not consider it to be a comprehensive statement of all the law applicable to forged checks, both parties have more or less accepted as true the principle that a bank is liable to its depositor for charging his account with a forged

check unless the depositor is guilty of contributory negligence, is estopped by his conduct, or has ratified the payment. The cases cited by appellee, all having to do with forged endorsements, for the most part either fall into one of the three named exceptions to this rule of liability or deny the bank's liability on the ground that the drawer has suffered no financial loss because the money by chance has been credited to his own account, has otherwise been used on behalf of the drawer or has reached the hands of the true payee. The cases decided in favor of the bank on the basis that there was no loss to the drawer do not constitute another exception to the above stated rule of negotiable instruments but are comprehended in the very universal rule of law applicable to almost any case that one cannot recover damages when no damage has been suffered. Such cases add nothing here.

Appellee's most effective case is the Merchants' Nat. Bank v. Federal State Bank, supra. Drawer's check was payable to its agent and customers. The agent forged the customers' signatures and deposited the money in his agency account. Because the agency account was the account into which the money should have gone in the absence of any forgery, the court held the bank free of liability even though the agent subsequently dissipated the funds. This is a strong case for appellee's position, but its effect is offset by Stumpp v. Farmers' Loan & Trust Co., supra, which as to the principles involved, is in direct conflict.

Also holding the bank free from liability are the cases already mentioned in which the funds reached the hands of the true payee. These cases we do not consider in point because we cannot accept the substitution, made by appellee in the instant case, of the true payee named in the authentic check of December 3 for the fictitious payee named in the forged check of December 4. These cases are in point only if such substitution is made. It cannot be made because no payee named in a forged check acquires any rights whatsoever.

Suffice it to say banking institutions undertake and solicit the trust of their depositors and as a consequence thereof are burdened with heavy responsibilities. We are unwilling in the instant case to expand the exceptions to this rule of strict liability on the part of banks. To do so in this case would make the bank's liability for the performance of duties undertaken by it dependent upon the intent of its depositor regardless of whether that intent had been transmitted by the depositor to the bank. To create such an uncertain area of legal liability seems unwise in the absence of most compelling reasons. Based upon the foregoing, we conclude that the existence of the authentic check is immaterial to the disposition of this case.

With reference to the embezzlement of these funds by Martin, we again

find a fact which seems significant but lacks any probative force in disposing of this case. There is only one forger among millions who does not spend the money acquired by his forgery on objects other than those desired by the person on whose account the forgery is made. It is the strange coexistence in this case of the idea of embezzlement with the fact of forgery that obscures the rules of law applicable to these particular facts. The act of embezzlement could not in fact take place until the authentic check was negotiated. There is no proof that this check ever was negotiated nor is there even proof that the authentic check was in existence at the time the forged check was cashed. When the bank pays a forged check of its depositor, the bank is presumed to be paying the check out of its own funds. Therefore, any embezzlement or dissipation of funds by Martin in this case was an embezzlement or dissipation of the funds of the bank and not of the funds of Mrs. Morgan.

Basically, appellee is arguing that appellant was going to lose this money anyway by virtue of Martin's alleged embezzlement; therefore, says appellee, whatever the bank has done wrong would not have changed the ultimate result. Superficially this argument is appealing. In reality the bank had a duty to its depositor, the appellant, to discover this forgery. As the case actually appears before us, with the authentic check never having been negotiated,

the bank's discovery of the forgery necessarily would have saved the appellant the $16,117. In our judgment, appellant's loss is related to the actionable wrong of appellee with sufficient directness to establish the liability of the bank.

Perhaps this decision can be attacked on the basis of speculation beyond the facts proved in the record. By the same token, it is almost impossible to attempt disposition of this case without some reasoning based upon speculation. That this is true is obvious from appellee's own brief; referring to appellant's authentic check, appellee states:

"By this act on her part she intended E. H. Martin & Company to receive that amount of money out of her account in the First National Bank in Albuquerque, New Mexico. This check was an order on the bank. *It was valid and outstanding at the time the check bearing her forged signature was presented.* By payment of the forged check the intended payee got exactly what Mrs. Morgan intended him to have, to-wit, $16,117.00 out of her account in the First National Bank in Albuquerque. In the eyes of the law we submit that this is a true case of damnum absque injuria." (emphasis added)

The underlined portion of the above statement is entirely unsupported by the record and is pure speculation on the part of appellee. Further, it brings into focus what

we consider one controlling factor in this case, namely, that the bank in cashing this forged check was acting pursuant to no known or even existing authorization as of the time of payment. There is nothing in the record to establish that Martin did not destroy the authentic check on December 3, the day before the forged check was presented.

The judgment of the trial court is reversed and the cause ordered reinstated on the docket for disposition in accordance with the views herein expressed.

It is so ordered.

McGHEE, C. J., and SADLER, COMPTON and LUJAN, JJ., concur.