Chauncey J. Jones, Appellant, v. Harris Trust and Savings Bank and The First National Bank of Chicago, Appellees.

Gen. No. 38,021.

Opinion filed November 5, 1935. Rehearing denied November 22, 1935.

Louis W. Reinecker, Jr., of Chicago, for appellant.

Lord, Lloyd & Bissell, of Chicago, for appellee Harris Trust & Savings Bank; L. Duncan Lloyd, of counsel.

Nat M. Kahn, of Chicago, for appellee First Nat. Bank of Chicago.

Mr. Presiding Justice Scanlan delivered the opinion of the court.

Chauncey J. Jones sued Harris Trust & Savings Bank, a corporation, in a contract action of the first class. Defendant caused The First National Bank of Chicago, a corporation, to be brought into the action as a third party, under the rules of the municipal court. After a trial by the court there was a finding and judgment for defendant and plaintiff appeals.

The statement of claim alleges that the copartnership doing business as Jno. F. Clark & Co. (hereinafter called Clark & Co.), on October 30, 1931, drew a check upon defendant for $5,353.50, payable to the order of plaintiff; that on November 3, 1931, defendant paid the check upon a forged indorsement of plaintiff's signature and deducted the amount of the check from the account of the drawer; that notice of the forgery and a demand for the return of the money so deducted was made upon defendant, whereby defendant became indebted to Clark & Co. in the sum of $5,353.50 with interest thereon at the rate of five per cent per annum from November 19, 1931, the date of the demand; that on April 20, 1933, Clark & Co. assigned to plaintiff their claim against defendant; that plaintiff is the actual and bona fide owner of the claim

and that defendant is indebted to him in the amount of the check, with interest as stated. Leave was granted defendant to issue a verified third party notice to The First National Bank of Chicago, which notice sets forth, *inter alia,* that defendant and third party were banking corporations; that Clark & Co. were depositors with defendant and had a commercial checking account with it; that on October 30, 1931, Clark & Co. issued a check drawn upon defendant and payable to the order of plaintiff; that before any indorsements appeared on the check it was presented to defendant for certification without the knowledge or consent of plaintiff or Clark & Co., and that defendant, without knowledge thereof, stamped upon the face of the check, "Accepted," etc., but that said acceptance was not a legal acceptance and was of no binding force by reason of the matters stated in the affidavit; that on November 3, 1931, third party defendant presented to defendant the check, through the Chicago Clearing House, with the name Chauncey J. Jones written on the back thereof; that there also appeared on the back of the check the following: "Pay The First National Bank Chicago, Ill. 6528 Or Order Abe M. Rohr," followed by the indorsement of third party defendant which guaranteed all prior indorsements upon the check; that defendant, relying upon the indorsement of third party defendant, paid the latter the $5,353.50; that on November 18, 1931, Clark & Co. notified defendant that payment had not been made to plaintiff, that the name Chauncey J. Jones indorsed upon the check was not his indorsement and was a forgery, and that third party defendant and prior indorsers had no valid or legal title to the check when it was presented for payment, and Clark & Co. made a demand upon defendant to reimburse and make good its commercial account to the extent of $5,353.50; that defendant immediately gave notice of the alleged forgery to third party defendant and also notified it that if defendant was held

liable it would request that judgment be entered against third party defendant to make good its guarantee in its indorsement; that defendant is entitled to recover from third party defendant such amount or amounts, if any, as plaintiff may recover against it in this action and it demands judgment against third party defendant for such amount, if any, as may be found due and owing from defendant to plaintiff.

In the statement of defense filed by defendant it alleges, *inter alia,* that prior to the filing of the instant suit plaintiff filed in the municipal court of Chicago a suit against Clark & Co. in which plaintiff alleges that he demanded the return of 100 shares of Gillette Safety Razor Company preferred stock or the proceeds from the sale thereof; that plaintiff by filing the said suit elected to disclaim any interest which he might have had in the check in question or the moneys represented by it; that on April 20, 1933, plaintiff executed a release which recites that plaintiff had made claim against Clark & Co. for the proceeds of the sale of said stock, that the parties were desirous of settling any controversy relating thereto and that plaintiff releases Clark & Co. from all claims, etc., by reason of the sale of said stock; that said release operates to the benefit of defendant and releases it from any liability to Clark & Co. in connection with the check; that "any cause of action Jno. F. Clark & Co., a co-partnership, might have had against defendant, due to Jno. F. Clark & Co.'s liability to the plaintiff herein, is dependent upon such liability, all such liability of Jno. F. Clark & Co., a co-partnership, to plaintiff was released by said plaintiff, Chauncey J. Jones and accordingly the liability of defendant to Jno. F. Clark & Co., a co-partnership, if any, is also thereby released"; further alleges that plaintiff was not the intended payee in the check and denies that he was the payee of the check; further alleges that defendant is informed and believes that a short time prior to October 30, 1931, one Sam Forman

delivered to Clark & Co. the said certificate evidencing the said stock registered in the name of plaintiff and indorsed in blank, with the signature of the indorsement guaranteed by the First National Bank of Waukegan and witnessed by one George W. Fay, which said certificate was delivered to Clark & Co. for sale on the New York Stock Exchange and was thereafter sold by them on said exchange for a price, after deducting commission, amounting to $5,353.50, and that the check was then issued and delivered to said Forman and was thereafter paid and charged to the account of Clark & Co.; that defendant denies that the indorsement on the check was not made by plaintiff or with his authorization or consent, express or implied, and further denies that the indorsement on the check is a forgery; that Clark & Co., plaintiff's assignor herein, has not and will not suffer any loss or damage by reason of or resulting from the allegations contained or set forth in the statement of claim filed herein, or the payment by defendant of the check, or the charging of the check against the account of Clark & Co.; that the payment of the check has been ratified by the acts of the parties; further alleges that plaintiff was negligent in his conduct and dealings in the entire transaction, which made it possible for the transaction to occur, and any loss which he might have incurred is directly attributable to himself.

In the trial court third party defendant filed no appearance and no plea of any kind, but its attorney was present during the trial and took part in the defense of defendant. Under Rule 41 of the municipal court of Chicago, third party defendant was in default for its failure to enter an appearance. In this court defendant has not filed a brief, but third party defendant, notwithstanding the fact that it was in default in the trial court, has filed a brief in behalf of itself only. In our consideration of the case we have not deemed it necessary to question third party defendant's position

in this court. Defendant, however, has filed a motion here ''that in the event that the judgment of the lower court is reversed and judgment entered in this court against the appellee, Harris Trust & Savings Bank, in favor of the appellant, Chauncey J. Jones, then that a judgment be entered herein against the Appellee, The First National Bank of Chicago, a corporation (third party defendant), in favor of the Harris Trust & Savings Bank, a corporation, for such like amount and costs, conditioned upon said Harris Trust & Savings Bank satisfying such judgment as may be entered against it in favor of the appellant, Chauncey J. Jones, in this court.'' A verified affidavit in support of the motion is attached to it. The affidavit recites the steps taken in the trial court to make The First National Bank of Chicago a third party to the action, and further recites:

''4. That The First National Bank of Chicago, a corporation third party defendant, has not filed any answer, plea or pleading of any kind in connection with said third party notice issued pursuant to order of court but has made default in this connection.

''5. That the defendant, Harris Trust & Savings Bank, did on the 2nd day of March, 1934, tender the defense of this cause to the First National Bank of Chicago, a corporation, and thereafter the attorneys for The First National Bank of Chicago, a corporation, joined with the attorneys for the defendant, Harris Trust & Savings Bank, in the preparation and filing of the affidavit of defense herein.

''6. That at the trial of said cause the said The First National Bank of Chicago, third party defendant, defended said action by the said plaintiff against Harris Trust & Savings Bank and that the court did at the conclusion of the trial enter a finding in favor of the defendant, Harris Trust & Savings Bank.

''7. That the appellant, Chauncey J. Jones, has asked that the judgment of the lower court be re-

versed, and that judgment be entered in this court in favor of the appellant, Chauncey J. Jones, against the Harris Trust & Savings Bank, one of the appellees herein.

"8. That the appellee, The First National Bank of Chicago, a corporation (third party defendant), heretofore filed its brief and argument herein. It is stated on pages 1 and 2 thereof as follows:

" 'Moreover, the real party defendant is The First National Bank of Chicago, who endorsed the check in question after receiving it from one of its customers for deposit and obtained payment thereon from the Harris Trust & Savings Bank. In other words, the real parties to this controversy are John F. Clark & Company, the drawer of the check (who assigned their rights under the check to Jones), against The First National Bank of Chicago, who, under the rules of the Municipal Court, is described as "Third Party Defendant." '

"And that the First National Bank of Chicago is in fact the real party in interest as defendant herein.

"Wherefore, the appellee respectfully represents that in the event that the judgment of the lower court is reversed and judgment entered herein in favor of the appellant, Chauncey J. Jones, and against the appellee, Harris Trust & Savings Bank, said appellee, Harris Trust & Savings Bank, would be entitled to recover judgment against The First National Bank of Chicago (third party defendant), for a like amount and costs, upon the payment by the appellee, Harris Trust & Savings Bank, to the appellant, Chauncey J. Jones, of such judgment and costs as may be entered against it in this court."

Third party defendant has not answered this motion, but states in its brief, that "The First National Bank of Chicago, third party defendant, is in fact the defendant in this case," and that if the judgment of the lower court is reversed and judgment entered here in

favor of plaintiff, that defendant bank would be entitled here to a judgment against third party defendant for a like amount upon the payment by defendant to plaintiff of the judgment.

The facts were stipulated. Plaintiff was 80 years of age at the time of the transactions in question, which occurred during October, 1931. He was a former president of the First National Bank of Waukegan but had retired from business at the time in question. Certain securities, including 100 shares of Gillette Safety Razor Company preferred stock, were obtained from plaintiff by a gang of swindlers upon the promise that they were not to be sold or pledged, or used for any purpose, but were to be held by the swindlers, to show the good faith of plaintiff. The securities had theretofore been pledged by plaintiff to a bank and at the time of the pledge were indorsed in blank by him and his signature guaranteed by the bank, but plaintiff forgot that fact, apparently, when the swindlers obtained possession of the securities. When the swindlers obtained the securities they at once attempted to sell or dispose of them. They sold the Gillette stock through the brokerage house of Clark & Co. and the latter, after deducting commissions and expenses, drew their check upon defendant, payable to the order of plaintiff, in the sum of $5,353.50, dated October 30, 1931, and delivered it to Forman, one of the swindlers. On November 2, 1931, the check was presented to defendant for certification by someone other than plaintiff or Clark & Co. and it was certified and accepted by defendant. At the time the check was cleared through third party defendant it bore a purported indorsement of plaintiff and also an indorsement of one Abe M. Rohr, through whose account with third party defendant the check was cleared and paid. Third party defendant received payment of the check from defendant, through the clearing house, and deposited the proceeds to the

account of Rohr. The purported indorsement of plaintiff was not in his handwriting and he did not authorize anyone to write his name on the back of the check. During October and November, 1931, Rohr, who was a member of the gang of swindlers, had a checking account with third party defendant and he withdrew the proceeds of the check as soon as they were credited to his account, and third party defendant was never reimbursed by him for the amount of the check.

Charles H. Borden, an attorney, testified, on behalf of plaintiff, that when the matter was brought to his attention by plaintiff he negotiated with Clark & Co. for the return of the Gillette stock; that in the early part of November and for several months thereafter, he, as plaintiff's attorney, discussed the matter of the check with defendant; that its senior vice president requested the witness to obtain an affidavit in reference to the purported indorsement of plaintiff on the check and to then take the matter up with the auditor of the bank, Mr. Burkhardt; that on November 19, 1931, he presented the affidavit to defendant, at which time "defendant bank" notified the witness that it would take the matter up with third party defendant; that Mr. Burkhardt told him that the purported indorsement was obviously a forgery and the liability would eventually fall upon third party defendant but that before defendant paid the amount of the check he wanted to discuss the matter with third party defendant; that a few days later Burkhardt stated that third party defendant was trying to find some excuse to avoid paying the check and that if it were not for the attitude of that bank the funds would be turned over very quickly. The witness further testified that on November 19, 1931, at the direction of Clark & Co., he made a formal demand on behalf of that company upon defendant for the return of the funds deducted from the account of that company. The witness further tes-

tified that Burkhardt and the comptroller of defendant stated to him that they were inviting a suit from Clark & Co., as there was no question about their liability as far as Clark & Co. was concerned, but they wanted to settle the question between themselves and third party defendant, and that it would not in any way affect the banking relations of Clark & Co. if suit was commenced; that thereupon the witness said: "Will you convey that information to Jno. F. Clark & Co., particularly to Dan L. Laser?" to which they replied, "Yes, we will," whereupon they called the Clark company on the telephone and explained the situation to Dan Laser, one of the partners; that they then told witness that if he would see the attorney for Clark & Co. that an assignment would be executed and a suit could be started against them "and this question will be settled very quickly." No testimony was offered in rebuttal of the testimony of Borden. The trial court ruled that that testimony was admissible only as to defendant. As a result of the conferences between Borden and defendant, Clark & Co. executed and delivered to plaintiff an assignment whereby they sold, transferred, assigned and set over to plaintiff all claims, causes of action, etc., that they had or might thereafter acquire against defendant by reason of the payment of the check in question, and as a consideration for the assignment plaintiff released and discharged Clark & Co. from all claims, debts or demands by reason of the sale of the stock in question other than the right, title and interest sold and assigned by Clark & Co. to plaintiff under the assignment. The suit of plaintiff against Clark & Co. was thereupon dismissed by stipulation and the instant suit was commenced.

From the attitude of defendant in the trial court and here, where no brief is filed in its behalf, it is plain that it does not care to assume the defense to the action, and it is undisputed that the assignment by Clark &

Co. to plaintiff of their claim against the bank was made at its suggestion. From the letter of December 2, 1931, written by the attorney of third party defendant to defendant, it appears that at that time third party defendant based its denial of liability upon the sole ground that the indorsement in question was not forged. That defense was abandoned when it was stipulated that the purported indorsement of plaintiff was not in his handwriting and that he did not authorize anyone to write his name on the back of the check. The law of this State as to the obligations of a bank to its depositor in the matter of checks drawn by the latter is so well settled that it is unnecessary to cite the same. (See *United States Storage Co. v. Central Mfg. Dist. Bank,* 343 Ill. 503; *Cosmopolitan Bank v. Lake Shore Bank,* 343 Ill. 347; *Wizard Oil Co. v. United States Express Co.,* 265 Ill. 156; *Gustin-Bacon Co. v. First Nat. Bank,* 306 Ill. 179.)

It is conceded that in the instant case plaintiff stands in the shoes of Clark & Co.

Third party defendant states, in its brief: ''The fundamental defense of the defendant here is that Clark & Company suffered no pecuniary loss as a result of issuing their check in payment of the stock they purchased. . . . The basic defense in this case, which overcomes all of the contentions of the plaintiff, is that Clark & Company suffered no pecuniary loss by reason of the check. . . . At the risk of repetition, we again state that since Clark suffered no loss because of the check, and received value therefor, namely, the stock, Clark's assignee, Jones, can recover no more than Clark could recover; and since no damages to Clark have been proven, we respectfully urge that the judgment of the trial court below was correct.'' We find no merit in the strained argument in support of this position. It is stipulated that defendant charged Clark & Co.'s commercial account with the amount of the

·check and that the former has not reimbursed, in any way, the latter for the amount thus charged. Plaintiff had sued·Clark & Co. to recover the amount realized by them from the sale of his stock, and in return for the dismissal of that suit and the release of its liability in the transaction in question Clark & Co. assigned to plaintiff its right of action against defendant. It would hardly be seriously contended that Clark & Co. could not have brought an action against defendant and recovered the amount of its check that was paid out on the forged indorsement of the payee, and third party defendant not only concedes but insists that plaintiff in the instant action stands in the shoes of Clark & Co. It is claimed that *Andrews v. Northwestern National Bank,* 107 Minn. 196, is a parallel case upon the facts and that the decision therein supports the instant contention. Whether we agree with all· that is stated in that opinion, or not, is immaterial, as the case is not applicable to the instant one upon the facts. There the plaintiffs forwarded to their agent a check to be used in paying their debt to a customer. The agent forged the name of the payee and deposited the check in a bank to his own credit. The bank on which the check was drawn paid it on the forged indorsement. The agent was short in his account with plaintiffs and he opened an account in a bank in the name of plaintiffs and deposited therein a sum of money which included the proceeds of the forged check. The plaintiffs demanded of the agent certain moneys which they claimed he should account for and he thereupon informed them that it was in a bank to their credit, except about $79, which he then paid, and handed to them a bank pass book in their name which showed that they had to their credit in that bank the sum of $1,003.01. The opinion states that when plaintiffs accepted the bank book they were not aware that the amount credited to them therein was to any extent the proceeds of the check that was ·

paid on the forged indorsement and the $1,003.01 was given by the agent to plaintiffs in settlement of a shortage known on that date and for no other purpose and upon no other consideration. Later plaintiffs sued the bank to recover $926.72, the amount of the check that was paid on the forged indorsement. The Supreme Court of Minnesota stated that the facts presented "a rather unusual condition of affairs"; that under the circumstances of the case *the agent's debt to plaintiffs remained unpaid,* and that

"The result of the entire transaction is that the money started with Andrews & Gage, and, after passing around the circle, came back to them. The fact that credits, instead of cash were used, does not change the legal effect."

In a concurring opinion by Lewis, J., he states:

"The mere fact that appellants received the proceeds of the check from Langdon would not prevent recovery. If appellants had been misled and had lost an opportunity to otherwise collect their claim from Langdon, then in my judgment the defense here urged would not be tenable. . . . Although the court found that appellants had no knowledge or information that the money received from Langdon was to any extent the proceeds of the check, yet the court also found that they had the check with all the indorsements in their possession, and knew that Thomas had never received it, and had not indorsed it, and that Langdon had indorsed it, claiming to be the agent of Thomas. It seems reasonably clear that appellants were in possession of all of the facts, and could readily have ascertained by an examination of the bank book that the money paid them by Langdon was the proceeds of the check. If appellants knew that Langdon had forged Thomas' name, and had drawn the money on the check from the local bank, they had every reason for believing that the money placed to their account in the pass book was that

identical money. In receiving the money thus paid out by the local bank, appellants ratified the indorsement, and consented to its collection from the bank upon which the check was drawn. . . . I concur in the result."

Third party defendant states that "as soon as Jones knew all the facts he promptly repudiated the sale and demanded his stock," and they argue that he "thereby disclaimed any interest in the proceeds of the stock evidenced by the check. . . . Jones again evidenced this election by instituting suit against Clark & Company for the value of his stock; and in his Statement of Claim he again admitted that he first demanded the stock from Clark & Company. Having made his election, he is estopped to change the facts." The law pertaining to the election of remedies has no place in this proceeding. Whether it might have been interposed by Clark & Co. in the suit by plaintiff against them need not be determined. Certainly the point now made could not have been interposed had Clark & Co. sued defendant, and, as we have several times stated, third party defendant properly insists, in its brief and in the oral argument, that plaintiff, in the instant proceeding, stands in the shoes of Clark & Co.

Third party defendant contends, (a) "Foreman became owner of the check"; (b) "the check was payable to bearer." It is sufficient to say that neither of these contentions is supported by the facts of the case.

Third party defendant closes its brief by contending that the negligence of plaintiff in trusting a dishonest person with his stock certificate was the proximate cause of his loss and that, therefore, "it is inequitable to penalize defendant." It is sufficient to say in response to this argument that the negligence of plaintiff, if any there was, would have no bearing upon Clark & Co.'s right to recover in an action by them against defendant. In such an action the judgment

against defendant would result from its negligence in paying the check upon the forged indorsement of plaintiff. The alleged negligence of plaintiff, even if it could be considered in the instant case; did not "directly and proximately affect the conduct of the bank in the performance of its duties." (See *United States Storage Co. v. Central Mfg. Dist. Bank, supra,* 513.) Indeed, had Forman obtained the check by stealth, the result, in so far as the payment of the check is concerned, would have been the same.

After a careful consideration of the undisputed facts and the law bearing upon the same, we have reached the conclusion that there is no merit to the defense and that plaintiff is clearly entitled to a judgment.

We find the issues as between plaintiff, Chauncey J. Jones, and defendant, Harris Trust & Savings Bank, a corporation, in favor of plaintiff and against defendant, and we assess plaintiff's damages at $6.413.73 (which includes the amount of the check, $5,353.50, and interest at the rate of five per cent per annum from November 19, 1931, $1,060.23) and costs, and judgment will be entered here for plaintiff and against said defendant for $6,413.73 and costs, execution to issue against said defendant therefor.

We find the issues as between defendant, Harris Trust & Savings Bank, a corporation, and the third party, The First National Bank of Chicago, a corporation, in favor of defendant and against third party, and assess defendant's damages at $6,413.73 and costs, and judgment will be entered here for defendant and against third party for $6,413.73 and costs, but execution will be stayed thereon until defendant pays to plaintiff the amount of the judgment and costs entered here against it and in favor of plaintiff.

*Judgment of the municipal court of Chicago reversed.*

*Judgment here for plaintiff, Chauncey J. Jones, and against defendant, Harris Trust & Savings Bank, a corporation, in the sum of $6,413.73 and costs.*

*Judgment here for defendant, Harris Trust & Savings Bank, a corporation, and against third party, The First National Bank of Chicago, a corporation, in the sum of $6,413.73 and costs, execution on this judgment to be stayed until defendant pays plaintiff the amount of the judgment entered here against it in favor of plaintiff.*

SULLIVAN and FRIEND, JJ., concur.